By the Court.
 

 Tbe question before tbe court is whether tbe finding and order of the commission in this case were manifestly against tbe weight of tbe evidence and, therefore, unlawful or unreasonable.
 

 Tbe function of tbe commission in such matters is defined in Section 504-3, General Code, as follows:
 

 “Upon tbe bearing of said application said commission shall ascertain the facts, and make its finding thereon, and if such facts satisfy tbe commission that tbe proposed abandonment, withdrawal or closing for
 
 *424
 
 traffic or service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, they may allow the same; otherwise it shall be denied, or if the facts warrant, the application may be granted in a modified form.”
 

 The function of the court in reviewing the finding and order of the commission is defined by Section 544, General Code, as follows:
 

 “
 
 A final order made by the commission shall be reversed, vacated or modified by the Supreme Court on appeal, if upon consideration of the record such court is of the opinion that such order was unlawful or unreasonable.”
 

 In the interpretation of its jurisdiction in this regard, this court has on numerous occasions stated that a finding and order of the commission should not be disturbed and will not be disturbed unless fit appears from the record that such finding and order are manifestly against the weight of the evidence, and are so clearly unsupported by it as to show misapprehension or mistake, or wilful disregard of duty.
 
 H. & K. Motor Transportation, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 135 Ohio St., 145, 151, 19 N. E. (2d), 956, and authorities there cited.
 

 The record in this case shows that the service offered through the trains sought to be withdrawn is enjoyed by many businessmen along the route and that the withdrawal of the same will cause much inconvenience unless substituted service may bridge the gap.
 

 On the other hand, the record shows that the revenue from passenger, mail and express service on these trains has been gradually decreasing over the past six or eight years, while the expenses of operating the trains have increased. Furthermore, there is no showing that there is any reasonable hope that the volume of such service will increase, or that it may become profitable. The record shows that while these trains on the whole have been operating at a profit, that profit
 
 *425
 
 is derived wholly from the freight service. The operation, so far as passenger, mail and express service are concerned, entails a constant loss.
 

 In this connection, some facts and figures furnished by the record reflect a situation which calls for serious consideration. The trains in question were formerly operated for passenger service only. Diminishing returns and increased expense of operating required their discontinuance and there was substituted the mixed train service which is now operating. The diminishing revenue and increasing expense still continue. Figures given in the record and here restated do not include maintenance of right of way, depreciation of equipment, overhead expense, ordinary taxes or interest on investment. In 1938, these trains carried 2,226 passengers between Toledo and Delphos, resulting in a gross revenue of $2,239.93 or 3.9 cents per train mile for that year. For the year ending June 1, 1939, the gross passenger revenue from these trains over the entire route of 206 miles from Toledo, Ohio, to Frankfort, Indiana, was $4,776.45. The revenue for carrying mail over the entire line for the same period was $26,058.40, express revenue was $9,961.79, or a total for the year for the three services of $40,796.64. The average earnings for passenger service over the entire route was 3.2 cents per train mile, while the total average earnings for the three services was 27.1 cents per train mile. The earnings for the three classes of service have been gradually going down while the operating expenses have been increasing, due largely to increased crew wages, cost of locomotive repairs and fuel.
 

 The railroad offered evidence to the effect that the total cost of operating these two trains was now in excess of $156,000 per year; that if their operation was eliminated, the freight service now hauled by them could be shifted to other freight trains at an operating cost not to exceed $70,000 per year, resulting in a profit
 
 *426
 
 of $86,000. This sum, less the revenues from passenger, mail and express service in the sum of $41,000 per year, would leave a net profit of $45,000 to be made by the change.
 

 In other words, the railroad claims that it is suffering a loss of $45,000 per year in order to provide the passenger service returning a revenue of only $4,700 per year. The evidence also shows that the railroad has not been able to pay any dividends to either common or preferred stockholders in the past eight years. The. evidence also discloses that a better mail service and an equally good express service can be provided if the train service is withdrawn.
 

 Counsel for the protestants insist that the situation disclosed in this case is comparable to that shown to exist in the case of
 
 Village of Millersburg
 
 v.
 
 Public Utilities Commission,
 
 ante, 75, 27 N. E. (2d), 1020, wherein this court reversed the order of a divided commission providing for the withdrawal of train service on the Pennsylvania Railroad Company lines between Akron and Columbus. A careful examination of the situation in the above-mentioned case shows important differences from those in the case at bar. In that case the trains in question operated between two populous cities, with a number of other important cities located on the line between them, such as Orrville, Fredericksburg, Gambier and Mt. Vernon. Four of these cities, including the terminal cities, are county-seat towns or cities having large industrial growth and development and surrounded by densely populated agricultural areas. The long-continued service offered by these trains had developed specialized industries which were especially dependent upon this service and, to a large extent, would be destroyed by its withdrawal. While the operation of the service in that case showed loss, it was not so great, all things considered, as the loss shown in this case, and it was by no means demonstrated in that ease that there were not possibilities of
 
 *427
 
 developing further service to a point of profitable operation.
 

 The commission in the instant case, all members concurring, found as follows: “The record fairly construed indicates that these two trains operated as mixed trains are at least breaking even financially, not giving effect, however, to certain fixed charges. It was testified that if these trains had been operated strictly as straight passenger trains, the out-of-pocket loss to the company would have been annually $100,000, yet Mr. Ayres, Cleveland, Ohio, general
 
 manager
 
 of the applicant, says that if the company was to be permitted to rearrange its freight service and to abandon passenger service, it would thereby effect a net annual savings of $45,000. * # *
 

 “It is apparent to us that if this passenger service could be eliminated, applicant thereby would be placed in a position whereby it could effect a substantial saving. From the testimony of operating officials we conclude that applicant might well take advantage of all legitimate savings. It seems that it has paid no dividends on either common or preferred stock since 1932, and its entire passenger operations have failed to show a profit during recent years. The expense of operating the passenger service in question has gradually and materially increased during the last five years, while the earnings have gradually and to a very marked degree decreased during such period. The evidence shows that the trains in question will not transport an average of two passengers, and that that would be true even though more modern equipment were used. Applicant’s experience in this regard is not peculiar. The advent of motor transportation has seriously injured local rail transportation. We conclude that protestants do not seriously contend that applicant is in fact hauling many passengers. They do seriously contend, however, that it owes the public a duty to maintain mail and express service and present testimony to the effect
 
 *428
 
 that both such branches of service are reasonably well supported. This we believe to be true. However, applicant contends the handling of both mail and express will be amply cared for in the event these trains are discontinued. * * *
 

 “Mr. Graves, while representing the mail service, testified that in the event these trains were discontinued, mail service equally as good, or better, would be provided. Mr. McAvoy for the express company testified that his company contemplates the use of over-the-road trucks between Toledo and Delphos, Ohio, and that most, if not all, other points along the route already have express service furnished by agents other than the trains proposed to be removed.
 

 “* * * We feel that the traveling public does not sufficiently patronize these trains; that adequate substituted mail and express service will be provided and that applicant will be placed in a position to effect a substantial saving in the event of authority looking towards the removal of these two passenger trains.
 

 “We, therefore, having due regard for the public welfare and the cost of operating the service, feel that the application should be granted, with the effective date thereof sufficiently removed as to give the interested parties time to effect the contemplated substituted mail and express service.
 
 *
 
 * *”
 

 This court cannot say that the finding and order of the commission are unreasonable or unlawful. To do so would be to substitute the opinion of this court for that of the commission. This court is not justified in reversing the order of the commission.
 

 The order of the commission is affirmed.
 

 Order affirmed.
 

 Zimmerman, Turner, Williams, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., and Day, J., dissent.