238

Mohawk Motor, Inc., Appellant, *v.* Public Utilities Commission of Ohio et al., Appellees.

(No. 40414—Decided July 26, 1967.)

*Mr. Taylor C. Burneson,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. J. Philip Redick* and *Mr. Langdon D. Bell,* for appellee Public Utilities Commission.

*Messrs. George, Greek, King & McMahon, Mr. Paul F. Beery* and *Mr. David L. Pemberton,* for appellee Husman Express Company.

HERBERT, J. There appears to be a material variance between the transportation service to be rendered as stated in the application, to wit, to and from Bryan, whereas Husman limits the service to delivery, first to Cincinnati, and then to other points.

It seems further to be undisputed that shippers out of Bryan may receive *overnight service out of Cincinnati* but not out of Bryan, and such service is limited to places and points within 100 miles from Cincinnati.

Many practical problems may arise under the limitations

imposed by Husman. For example, Toledo is approximately 67 miles from Bryan. But a Bryan shipper, in order to secure a shipment of property to Toledo, under the proposed certificate, is required to ship his property over 200 miles south to Cincinnati, where it lays over until the next day. It is then shipped north over 200 miles to Toledo when it again lays over the next day before delivery. By going a direct route from Bryan to Toledo the shipper could secure delivery in one day or "direct overnight service."

From Bryan to Cleveland is approximately 145 miles. A Bryan manufacturer, shipping to Cleveland and the industrial northeast, would certainly be loathe to see his shipment going south 200 miles, there to lay over one night, before starting for its final destination in the northeast. He would, without doubt, conclude that such a circuitous and delaying route would not be in the public interest.

It is strange that neither the examiner, in his long report, nor the commission, in its opinion, did not make any reference or mention of the requirement fixed by Husman that if the certificate should issue all outbound traffic from Bryan would be required to go south to Cincinnati, some 200 miles, before it could be shipped to its destination.

It is further strange that neither the examiner nor the commission made any reference that the overnight service would be confined to points and places within 100 miles of Cincinnati, and further that such overnight service *would not be out of Bryan but would be out of Cincinnati.*

Husman may have recognized that there was no public need for the requested certificate but only that it would take some dollars out of certain carriers' treasury and put them in the treasury of other carriers, as disclosed by the record in Husman's testimony as follows:

"Q. Well, now, your company has authority to transport freight from Bryan to Cincinnati zone and return, so that type of authority, if granted in this case, *would be duplicative* of what your company already has, would it not? A. That's right.

"* * *

"Q. * * * Now, you said the granting of this would be an advantage, economically, to your company. I assume then that

you mean you would pick up a few more dollars? A. Few more dollars.

"Q. And at the same time you would be taking those dollars away from other carriers now handling the traffic, wouldn't you? A. Well, I don't—I would be taking it away from some one, of course.

"Q. That is what I mean. Somebody would lose what you gain? A. That's right." (Emphasis added.)

The commission, in its opinion, endeavors to point out deficiencies in the present authority stating:

"That existing transportation service of certificated carriers authorized to transport property from and to Bryan, Ohio, is deficient *in that it does not offer to the shipping public efficient, direct, next-day service for the transportation of property,* including less-than-truckload traffic, from Bryan, Ohio, to points and places in the state of Ohio, and from points and places in the state of Ohio to Bryan, Ohio." (Emphasis added.)

If there is such a deficiency, which the record fails to disclose with clarity, the proposed certificate would not, in any way, correct such deficiency. It is conceded that the proposed certificate does not offer direct service but rather under Husman's direction all traffic would be diverted south from Bryan away from any direct course to the east or northeast. Husman admits that there would be no next-day service out of Bryan but that the only next-day service would be out of Cincinnati. Consequently, it follows that the granting of the certificate would not, in any way, provide any improvement over the present method of transportation of property so far as the public interest is served.

One of the two public witnesses who testified was a Morris Snyder, traffic manager of Aro Corporation, which employs approximately 1,087 people. In discussing the distribution of the products of his company, he said, according to the review by the examiner, that:

"This distribution is primarily through jobbers who request that direct shipment be made to their customers. These customers may be located *at any crossroads in the state of Ohio where a gas station exists.*" (Emphasis added.)

It would hardly be possible or to the public interest to pro-

vide "direct next-day service for" motor transportation to every crossroads in Ohio.

The remaining witness for the applicant testified that he "believes that his company is entitled to expect direct carrier service to *most* points in the state of Ohio."

Requiring that all shipments out of Bryan go directly south to the Ohio River would hardly be direct service to the north and to the east.

In the case of *D. G. & U. Truck Lines, Inc., et al.,* v. *Public Utilities Commission,* 158 Ohio St. 564, 573, it was stated in the opinion of Judge Matthias that:

"* * * Such convenience and necessity must be shown by evidence adduced, the burden of which is upon the applicant for such certificate."

In *Mohawk Motor, Inc.,* v. *Public Utilities Commission,* 159 Ohio St. 77, at page 80, Judge Middleton stated that:

"* * * the burden of proving such public need is upon the applicant for the certificate."

A very pertinent suggestion is stated by the late Chief Justice Marshall at page 497, in the case of *New York Central Rd. Co.* v. *Public Utilities Commission,* 115 Ohio St. 493, that, when there is a showing of need, there must "* * * also be a showing of ability on the part of the applicant to supply that need adequately."

From a consideration of the entire record it appears doubtful that there is a deficiency in present transportation service. If any such deficiency can be claimed it is abundantly clear that the proposed certificate will not, in any way, correct any such deficiency but will largely duplicate service already established and in use, and, at the same time, will fail to provide overnight transportation service to and from Bryan, Ohio.

It follows that the order of the Public Utilities Commission is unreasonable and contrary to law, and such order of the commission is, therefore, reversed.

*Order reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.