OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(No. 78-233—Decided December 7, 1978.)

*Mr. William A. Spratley,* consumers' counsel, *Mr. Lewis I. Winarsky, Mr. Stephen P. Allison* and *Ms. Margaret A. Samuels,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik, Mr. Mark C. Sholander* and *Mr. Jonathan L. Heller,* for appellee.

LOCHER, J.

I.

Central to this cause is what is known as a "fuel cost adjustment clause." This is a provision in the rate schedule of an electric light company that requires the company to adjust the rates it charges to customers in accordance with any fluctuation in the delivery and acquisition cost of fuel used to generate electricity that has occurred since the time the commission's tariff order has been issued. R. C. 4905.01(E), (F) and (G). This ability to pass through to consumers the escalating fuel cost of the utility is alleged to foster little incentive for the utility to exercise efficiency in its fuel procurement policies and practices. Ostensibly, therefore, the General Assembly has mandated a close review of the fuel cost adjustment clause to insure that fuel

costs passed through to the consumers are fair, just and reasonable. R. C. 4905.301 and 4909.191. Moreover, in a recent decision this court admonished that fuel cost adjustment clauses are not and may not be permitted to become a carte blanche authorization to an electric utility to pass through expenses other than the fuel cost *fairly* attributable to the production of services to those customers. *Ohio Power Co.* v. *Pub. Util. Comm.* (1978), 54 Ohio St. 2d 342. The efficacy of the commission's semi-annual review, which here is assailed by the Consumers' Counsel, is the critical element assuring that the customer pays fair, just and reasonable fuel costs.

## II.

Appellant, in his first proposition of law, asserts that the commission improperly found the audit to be sufficient and that, without independently tested information in the areas to be examined by the audit, the commission could not determine that the fuel costs passed through were fair, just and reasonable. Consumers' Counsel alleges that the audit was insufficient by the commission's guidelines in two specific areas: (1) that it did not determine that all components of fuel charges were properly computed, and passed on to the customers, and (2) it did not make the required determination regarding the quality of delivered fuel.

A review of the record discloses adequate support for the commission's conclusion that the submitted audit report was sufficient. With respect to the quality of fuel, the submitted audit satisfies the respective objective of the audit program pronounced in the commission's guidelines. This objective is stated as follows:

"Determine that the *practices* followed assure that the quality and quantity of delivered fuel meets specifications." (Emphasis added.) Rule 4901:1-11, Appendix B, Ohio Adm. Code.

The audit report contains the following language:

"With respect to the performance audit, nothing came to our attention during the course of our review that caused us to believe that the existing fuel related *policies* and *pro-*

*cedures* do not promote the procurement of generating station *fuel* and purchased power at the best price available consistent with the quality and delivery requirements of the Company." (Emphasis added.)

The audit thus determined that practices are utilized by DP&L to assure the quality and quantity standards for fuel are met. In testing these practices, nothing, other than the noted suspension of quality checks during the labor strike,* was observed by the auditors which indicated the practices and procedures were ineffective. Thus, the audit report not only formulated a conclusion as to the effectiveness of practices followed by DP&L to assure the quality or quantity of delivered fuel meets specifications but further specifically *earmarked* the deviations from these practices which occurred because of the strike and severe weather.

The other specific allegation of insufficiency, the alleged failure to determine that all components of fuel charges were properly computed and passed on to the consumers, is similarly unsupported by the audit report. First, the audit report states:

"The financial audit was performed in accordance with generally accepted auditing standards and both the financial and performance audits were performed as outlined in our proposal to the Company dated April 28, 1977, and *are responsive to Chapter 4901:1-11 of the Commission's*

---

*At pages nine and ten of its audit report, Arthur Anderson & Company stated:

"*Strike and Weather Related Problems.* In several areas throughout the audit, deviations from normal Company procedures were noted. The deviations resulted primarily from 1) a lack of experienced manpower during the strike period (January 10, 1977 throughout the remainder of the audit period) and 2) the record breaking severe weather experienced in January and February. The following represents a list of problems noted:

"* * *

"2. As detailed in the 'Fuel Procurement Policies and Practices' section of the April 20, 1977 Opinion and Order in Case No. 76-536-EL-FAC, Subfile A, 'all sampling and analysis of coal has been suspended at Company operated stations due to the unavailability of labor,' during the strike, * * *."

*Rules of Practice* \* \* \* and the *specific guidelines and objectives for the performance* of such audits as contained in Appendix B of the Commission's April 21, 1976 Entry in Case No. 75-766-EL-ORD." (Emphasis added.)

Additionally, Arthur Anderson & Company, upon the basis of their financial audit, expressed in the report the following opinion:

"In our opinion, with respect to the financial audit, the Company has in place operating controls and procedures to 1) collect the necessary data for proper calculation and reporting of the fuel cost adjustment factor under Rule 26, which Rule became effective for the Company on July 24, 1976, and 2) to accurately apply the fuel cost adjustment factor to the customers' bills."

Adequate support in the record for the commission's conclusion that the audit was sufficient exists, and it will not be disturbed by this court. *Delphos* v. *Pub. Util. Comm.* (1940), 137 Ohio St. 422.

Assuming, *arguendo*, that Consumers' Counsel's allegations are viable, these two insufficiencies would not impair the commission's ability to lawfully determine that the fuel costs passed through are fair, just and reasonable. R. C. 4905.66(B)(2) requires an annual audit of the fuel related policies and practices of each electric utility. The result of the audit is to be considered by the commission, but that is not the only evidence which is to be considered. R. C. 4909.191(C)(2), (3) and (5). The electric light utility is required to annually submit "any data, information, or evaluation pertinent to the fuel procurement practices of the company which the commission determines is necessary for it to judge the prudence and effectiveness of such practices \* \* \*." R. C. 4905.66(A). Moreover, R. C. 4909.191 (C) imposes upon the electric light utility the burden of proof at the fuel cost adjustment hearing with respect to the reasonableness of its fuel costs. Consumers' Counsel's contention that the audit must contain sufficient information to support, in all particulars, the order and opinion of the commission is unsupported by the relevant statutory.

scheme. It must be noted, however, although the situation is not here presented, that the insufficiencies could effectively prevent any meaningful consideration by the commission. The audit does perform an essential role, and its absence, either actual or by its gross insufficiencies, could preclude the commission from making its required determinations.

This proposition of law is rejected.

### III.

Consumers' Counsel's second proposition of law essentially asserts two arguments. Consumers' Counsel alleges that the approval of Arthur Anderson & Company as the auditor was improper because of the illegality of the commission's entry *nunc pro tunc* of April 13, 1977. It is uncontroverted that no rehearing of the April 13, 1977, entry was sought. Consumers' Counsel is precluded from collaterally attacking the legality of this entry in this appeal.

The other argument raised is the question of the independence of the auditing firm. Essentially, Consumers' Counsel contends that the auditing firm was not shown to be independent, and, thus, the audit report should have been rejected. The commission, in its opinion, addressed this argument and found that no relationship between Arthur Anderson & Company and DP&L had been proven, which would warrant a finding of lack of independence as judged by the standards of the profession and the Securities and Exchange Commission. With respect to the testimony of the auditor, Richard Swanson, at a prior DP&L rate hearing, the record supports the finding that his testimony was as an expert witness on accounting matters and in accord with the ethical standards of his profession. Accordingly, this court will not substitute its judgment for the commission's. *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58. The receipt of a larger than average fee from DP&L by Arthur Anderson & Company, its renting of office space in DP&L's building, apparently at fair market rate, and the conversation between Swanson and the commission's chairman do not in and of themselves constitute

a violation of the applicable professional standards or signify any lack of independence.

The second proposition of law is without merit.

## IV.

Lastly, the Consumers' Counsel contends that the commission's chairman, who was contacted by Swanson, had engaged in an improper *ex parte* communication and thus should have disqualified himself. This contact by Swanson did not violate the commission's rule regarding *ex parte* discussion of the case. The rule prohibits discussion with parties. At the time of the conversation, neither Swanson nor Arthur Anderson & Company was a party. Indeed, they were not involved in this cause until the commission approved them as auditors in its June 1, 1977, entry. Even after approval, the commission viewed the auditor as an independent expert witness and not a party to this fuel cost adjustment proceeding.

The third proposition of law is rejected.

## V.

We find that the order of October 19, 1977, was not unreasonable or unlawful, or manifestly against the weight of the evidence, and, thus, the order is affirmed.

*Order affirmed.*

LEACH, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and HOLMES, JJ., concur.

HOLMES, J., of the Tenth Appellate District, sitting for SWEENEY, J.