HAROLD D. MILLER, INC., ET AL., APPELLANTS, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Harold D. Miller, Inc., *v.* Pub. Util. Comm. (1982), 1 Ohio St. 3d 162.]

(No. 81-1908—Decided August 4, 1982.)

*Messrs. Muldoon, Pemberton & Ferris, Mr. Boyd B. Ferris* and *Mr. Philip B. Cochran,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. James R. Bacha,* for appellee.

*Sanborn, Brandon, Duvall & van Deusen Co., L.P.A., Mr. James Duvall* and *Mr. E. H. van Deusen,* for intervening appellee J. L. Coats.

*Per Curiam.* The sole issue presented is whether the issuance of the subject certificate of public convenience and necessity was unreasonable or unlawful. R.C. 4921.10, which sets forth standards governing the commission's determination of whether to grant an application for a certificate of public convenience and necessity, provides, in part:

*"The commission may,* after notice and hearing, when the applicant requests a certificate to serve in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, *grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of the commission.* \* \* \*

"Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought. *If it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."* (Emphasis added.)

It is well established that pursuant to R.C. 4921.10, " \* \* \* the applicant has the burden of adducing evidence to show that the general public has a definite need for the proposed transportation service and that no reasonably adequate service exists." *R.D.S. Mowery, Inc.,* v. *Pub. Util. Comm.* (1981), 66 Ohio St. 2d 22, 23 [ 20 O.O.3d 14]. See, also, *D. G. & U. Truck Lines, Inc.,* v. *Pub. Util. Comm.* (1953), 158 Ohio St. 564 [49 O.O. 477]; *Mohawk Motor, Inc.,* v. *Pub. Util. Comm.* (1967), 11 Ohio St. 2d 238 [40 O.O.2d 208].

Appellants contend the commission failed to adhere to the requirements of R.C. 4921.10, in that the record does not indicate any deficiency, inadequacy or failure in existing service. It is argued that the record demonstrates existing service is "reasonably adequate" and, consequently, the certificate should not have been issued.

The record in the instant cause is voluminous. Testimony adduced during the hearings by oil and gas drillers and equipment suppliers reveals that this industry operates 24 hours daily, 365 days a year. It is absolutely essential to drillers that common carriers operate 24 hours a day, since drillers can lose in excess of $4,000 per day while a rig is idle and waiting to be transported to another drilling site.

Additionally, the record discloses that oil and gas wells in this state are frequently drilled off-road by as much as two miles. Specialized heavy duty equipment is required to transport drilling rigs from one site to another. Depending upon the length of a move and the size of the drilling rig involved, as many as 13 pieces of equipment, some of which are valued in excess of $100,000 each, may be necessary to effectuate a single move. Coats has $2,000,000 of specialized equipment with which to make deliveries of large rotary drilling rigs. He has been operating in Ohio for 12 years, is regarded as one of the premier drilling rig movers in this state and, until four months preceding the hearings before the commission in this cause, he leased his equipment to appellant W. J. Plumly, Inc.

The essential facts concerning appellants' ability to perform the activity for which Coats was issued a certificate can be summarized as follows. A Plumly executive testified that his firm owns no equipment with which to transport oil and gas drilling components. At the time of the hearings, Plumly

was leasing equipment from Mid-East Truck and Tractor Service, Inc. Since that time, however, Mid-East has acquired its own certificate of public convenience and necessity from the commission. Prior to Plumly's cancellation of its leasing arrangement with Coats, insurance payments, customer solicitations and billings were provided by Coats using Plumly's certificate. In return, Plumly received ten percent of Coats' revenues.

Appellant Porter Brothers, Inc., owns and leases equipment with which to move drilling rigs, however, this service is unadvertised and its office is only open 12 hours daily. Porter, unlike Plumly, does solicit business and bill some customers although it actively leases services from another firm specializing in the transportation of large drilling rigs, which also solicits and directly bills Porter's customers.

Appellant T. C. Spires, Inc., holds a certificate of authority to transport oil field supplies throughout Ohio. Spires' entire oil and gas equipment transportation is accomplished through leases, whereby lessors owning the equipment solicit the business, provide the drivers and effectuate the move. Spires does directly bill the customers, but only after it has been informed of an accomplished move. Additionally, Spires has not moved a rotary drilling rig for several years.

Appellant O.H. & F., Inc., leased its rotary rig transportation equipment to Harold D. Miller, Inc., until 1979, when O.H. & F. obtained a certificate of authority from the commission. Since 1979, this appellant has not transported a single rotary rig. Moreover, when asked to specify the primary rotary drilling rig movers in this state, O.H. & F.'s executive officer named Coats. He failed, however, to mention either his company's name or the name of any of the other five appellants.

Appellant McCandlish Brothers, Inc., owns substantial equipment with which to move drilling rigs, yet the record reveals that this appellant specializes in transporting smaller rigs. Mr. McCandlish testified that his firm last moved a large rotary rig more than ten years ago, and that he is unwilling to invest in the equipment necessary to transport large rotary type rigs. Furthermore, his office is open approximately 12 hours daily.

Finally, appellant Harold D. Miller, Inc., is authorized to transport oil and gas field drilling equipment and supplies from and to any point in Ohio. When questioned regarding the transportation of rotary rigs, Mr. Miller testified that his company has not engaged in this line of business for many years, and, further, he does not own the necessary equipment, nor is he willing to acquire it. This appellant is primarily engaged in the transportation of pipe.

Based upon the foregoing summary, appellants can be catergorized in two ways. The first category includes appellants O.H. & F., McCandlish and Miller. These three carriers have a combined total of 13 units in Ohio capable of transporting rotary rigs and associated equipment. Moreover, both McCandlish and Miller testified they were unwilling to invest in the equipment to provide the type of service currently being provided by Coats. Although O.H. & F. apparently could have additional equipment in Ohio within three days of

a request for service, a company official expressed unwillingness to provide more than the one unit presently located in this state, in order to respond to drillers' requests in a more timely fashion.

The law in Ohio is well established that " * * * a finding and order of the commission should not be disturbed and will not be disturbed unless it appears from the record that such finding and order are manifestly against the weight of the evidence, and are so clearly unsupported by it as to show misapprehension, or mistake, or wilful disregard of duty." *Delphos* v. *Pub. Util. Comm.* (1940), 137 Ohio St. 422, 424 [19 O.O. 126]. The commission's determination that these three appellants do not provide adequate service is entirely supported by the record and in accord with the hereinbefore mentioned provisions of R.C. 4921.10.

The second category includes appellants Plumly, Porter and Spires which rely heavily, if not exclusively, upon non-certified carriers who, under leasing agreements, actually perform the transportation of rotary drilling rigs and associated equipment. The record regarding these appellants is devoid of any complaints regarding inadequacy of service. The commission argues, however, that R.C. 4921.10 is not the sole touchstone when reviewing a certificate request. Our attention is directed to R.C. 4921.03 which provides, in part:

"The policy of this state is to:

"(A) *Regulate transportation by common * * * carriers * * * in such manner as to* recognize and preserve the inherent advantages of, and *foster sound economic conditions in,* such *transportation and among such carriers in the public interest;*

"(B) Promote adequate, economical, and efficient service by such motor carriers, and reasonable charges therefor, *without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices * * *.*" (Emphasis added.)

In *Bray* v. *Pub. Util. Comm.* (1942), 139 Ohio St. 409, 413 [22 O.O. 469], this court stated " * * * that the primary purpose of legislative enactment for regulation of carriers through the Public Utilities Commission is to secure the best transportation service possible, *and not to conserve the private interest of any carrier, unless the public interest demands it."* (Emphasis added.) Additionally, in *McLain* v. *Pub. Util. Comm.* (1924), 110 Ohio St. 1, 8, it was stated that " * * * *the Legislature was not concerned so much with the question of who shall reap the emoluments of the transportation service as it was in securing consistently and continuously an adequate transportation service for the convenience of the public."* (Emphasis added.)

Appellees argue, in light of R.C. 4921.03, and our previous decisions in *Bray* and *McLain, supra,* that the activities of appellants Plumly, Porter and Spires can best be characterized as wholesale subletting of their certificates in a manner contrary to the established policy for the regulation of common carriers. We agree.

In evaluating the effects of this practice, the commission stated:

"[I]t was not the intent of the * * * [General Assembly] in enacting Chapter 4921 [of the Revised Code] nor the commission's purpose in issuing certificates to create fiefdoms where the holder of the certificate merely collects a royalty from any person desiring to provide service to the public without himself having any genuine interest in, or ability to handle, the traffic. Such a situation hinders the development of new service in the certificate area and also deprives the person actually performing the work from receiving the full compensation for his labor, thereby affecting his ability to properly upgrade equipment and develop the business."

Appellants argue this court has held the leasing of equipment unobjectionable in the absence of evidence demonstrating deficiencies. *Mason* v. *Pub. Util. Comm.* (1973), 34 Ohio St. 2d 21, 24 [63 O.O.2d 43]; *Doc Goodrich & Son, Inc.*, v. *Pub. Util. Comm.* (1978), 53 Ohio St. 2d 70, 73 [ 7 O.O.3d 148]. It is noteworthy, however, that in *Mason* and *Doc Goodrich,* we addressed leasing as a *supplemental aid* to a common carrier's business, and not on a scale such as that prevalent in the cause *sub judice.*

Moreover, to deny the applicant's certificate on the basis that appellants provide adequate service when, in fact, they relegate the work for a ten percent royalty, would produce "undue preferences"as well as "unfair or destructive competitive practices" contrary to the explicit policy contained in R.C. 4921.03.

Appellants also assert that the commission exceeded its jurisdiction in considering the applicant's capability to handle off-road transportation contrary to the provisions of R.C. 4921.02, which vests the commission with regulatory powers over common carriers transporting property "over any public highway." We find this contention to be without merit.

In *McLain* v. *Pub. Util. Comm., supra,* at pages 6-7, this court stated:

" * * * The discretion to grant or refuse * * * [a] certificate * * * is lodged in the Public Utilities Commission. *That discretion is controlled by the existence or nonexistence of certain physical conditions in the territory to be served,* which do or do not make such service a public convenience and necessity. *The determination of the existence or nonexistence of such a condition is vested in the Public Utilities Commission,* without any legislative limitation or restriction as to the character of circumstances and physical situations which the Commission may consider in making such determination." (Emphasis added.)

The record in the instant cause is replete with evidence indicating that in order to complete a movement of rotary drilling rigs and related supplies, the carrier's specialized equipment must be pushed and pulled by bulldozers, over rough terrain, often as far as two miles to arrive at the drilling site. We conclude, therefore, that the commission properly considered the physical conditions associated with the territory and the applicant's ability to perform the ancillary services peculiar to the activity associated with the certificate issued.

Finally, appellants contend the commission's opinion and order does not

include specific findings of fact and conclusions of law, as required by R.C. 4903.09, and our prior holdings in *Ideal Transportation Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195 [71 O.O.2d 183], and *Motor Service Co., Inc.,* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 5 [68 O.O.2d 3]. We reject this contention on the basis that a cursory examination of the commission's opinion and order, by the most casual observer, reveals that the detailed findings of fact and conclusions of law contained therein are readily distinguishable from the summary opinions and orders rejected by this court in *Ideal* and *Motor Service.*

For all of the foregoing reasons, the order of the Public Utilities Commission, being neither unreasonable nor unlawful, is hereby affirmed.

*Order affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.