Werlin Corporation, Appellant, *v.* Public Utilities Commission of Ohio, Appellee.

[Cite as Werlin Corp. v. Pub. Util. Comm. (1978), 53 Ohio St. 2d 76.]

(No. 77-561—Decided February 8, 1978.)

*Mr. Taylor C. Burneson,* for appellant.
*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Thomas L. Mumaw,* for appellee.

WILLIAM B. BROWN, J. The issues raised by the instant cause are whether the commission had the power to consider the terms of and apellant's activities under its 1967 contract with McKibben when it determined that appellant was not a proper party to receive a private motor carrier permit and whether the commission's determination was supported by the evidence of record.[2]

Appellant argues in effect that the commission did not have the power to consider the terms of the contract with McKibben or its behavior under that contract because (1) R. C. 4921.04 does not grant the commission power to consider former behavior when it determines whether an applicant is a proper party to receive a permit, and (2) jurisdiction to determine the contractual rights of parties under a contract is vested exclusively in the courts. Implicit in the latter argument is the question of whether, in the instant cause, the doctrine of *res judicata* bars the commission from scrutinizing the terms, as well as the enforceability, of the contract.

R. C. 4921.04 delineates the general power vested in the commission. In addition to that general power, the

---

[2]Appellant also argues that the commission did not have jurisdiction to deny appellant's application without first complying with the notice requirements of R. C. 4921.02. This argument apparently rests on the conclusion that the commission's determination that appellant was not a proper party because it engaged in illegal certificate splitting under the 1967 contract is the equivalent of a finding, under R. C. 4921.02, that appellant was illegally "engaged as a motor transportation company." Although the same facts—in the instant cause appellant's activities under its 1967 contract—might form the basis for unfavorable determinations under R. C. 4921.02, as well as under R. C. 4923.07, a finding that one is not a proper party to receive a permit is not the equivalent of a finding that one has illegally engaged as a motor transportation company. The most serious consequence of an improper party determination pursuant to R. C. 4923.07 is the denial of a permit. An R. C. 4921.02 finding of illegal operation as a motor transportation company can lead to a criminal penalty. (See R. C. 4921.32 and 4921.99.) Appellant's argument that the notice requirements of R. C. 4921.02 apply to a R. C. 4923.07 finding is not, therefore, well taken.

General Assembly also bestows on the commission the duty to issue certificates of convenience and necessity and permits to motor transportation companies and to private motor carriers under R. C. 4921.10 and 4923.07.[3] The commission's power to issue certificates and permits also carries with it the duty to inquire into an applicant's prior activities in certificate and permit application hearings.

In *Alspaugh* v. *Pub. Util. Comm.* (1946), 146 Ohio St. 267, 268, this court affirmed the commission's denial of a certificate on the basis of the applicant's past actions. The court explained its review of those actions on the grounds that the commission must determine whether an applicant "is a person of the character and responsibility to whom such certificate should be issued" before it grants the certificate. The power imposed on the commission by the *Alspaugh* court is as appropriate to R. C. 4923.07 permit hearings as to R. C. 4921.10 certificate hearings. Not only does R. C. 4923.07 require the commission to consider a greater number of criteria when it reviews a permit applicant than R. C. 4921.10 requires it to consider for a certificate applicant, but R. C. 4923.07, unlike R. C. 4921.10, specifically conditions the grant of a permit on the finding that the applicant is a "proper person." If prior activity may be considered in an R. C. 4921.10 certificate

---

[3]Under R. C. 4921.10 the commission may award a certificate "only when the existing transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of the commission." R. C. 4923.07 conditions grant of a permit on the commission's finding (1) that the applicant has complied "with the law and with the rules and regulations of the commission governing private motor carriers," (2) that the applicant has proposed to operate as "a motor transportation company as provided in section 4921.02 of the Revised Code," (3) that the applicant "is a proper person to whom to grant a permit" and (4) that the applicant's receipt of a permit "will be consistent with the declared policy and purpose of the regulation of transportation by common and contract carriers by motor vehicle * * *."

hearing to determine whether an applicant has met the judicially-imposed requirement of good character, it certainly may be considered in an R. C. 4923.07 permit hearing to determine whether an applicant has met the legislatively imposed requirement that he be a "proper person." We therefore find that the commission had the power to consider the terms of and appellant's activities under its contract with McKibben when it determined, pursuant to R. C. 4923.07, that appellant was not a proper party to receive a permit.

Appellant contends further that the commission lacked jurisdiction to consider its prior activities pursuant to its contract with McKibben because jurisdiction to determine the rights of parties to a contract "is vested exclusively in the courts," and those rights were determined by the Court of Common Pleas prior to the commission's hearing. Appellant correctly asserts that the Public Utilities Commission "is a creature of the General Assembly" which "may exercise no jurisdiction beyond that conferred by statute." *Penn Central Transportation Co.* v. *Pub. Util. Comm.* (1973), 35 Ohio St. 2d 97, paragraph one of the syllabus; *Ohio Bus Line* v. *Pub. Util. Comm.* (1972), 29 Ohio St. 2d 222. Moreover, this court has held that the commission's jurisdiction does not include the power to determine the relative rights of parties growing out of agreements. (See *State, ex rel. Thomas,* v. *Thomas* [1929], 121 Ohio St. 450.) However, this court has not held that the jurisdictional limitations on the commission prevent it from exercising the powers which the General Assembly *has conferred* on it. (While the *Thomas* case held that jurisdiction to enforce the rights of parties to agreements and to declare receiverships could be exercised by the Court of Common Pleas and not by the commission, it affirmed the right of the commission to determine whether judicially-imposed receivership would be good cause for revocation of a carrier's certificate of convenience and necessity.)

The commission had the power, pursuant to R. C.

4923.07, to review the terms of the 1967 contract and appellant's activities under that contract when it determined whether appellant was a "proper person" to receive a carrier permit. Since the commission's review of the contract extended to its terms and to the activities of appellant and McKibben under the agreement but not to the enforceability of the contract or to the relative rights of appellant and McKibben under the agreement, the commission did not usurp the jurisdiction of the courts.

Implicit in appellant's argument that the commission usurped the jurisdiction of the courts is the question of whether, under the doctrine of *res judicata*, the decision of the Court of Common Pleas enforcing appellant's contract with McKibben bars the commission from declaring that contract an illegal attempt to split a certificate. It is established law in Ohio that, "[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." Paragraph one of the syllabus in *Norwood* v. *McDonald* (1943), 142 Ohio St. 299, approved and followed in *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108. Moreover, even where the same "parties and their privies" engage in subsequent litigation involving a different cause of action than that which they formerly pursued in a court of competent jurisdiction, they are estopped from raising any "point or a fact which was actually and directly in issue" in the former action. *Norwood, supra,* paragraph three of the syllabus. See, also, Restatement of the Law 2d, Judgments, Tentative Draft No. 4, Section 68. Therefore, the decision of the Court of Common Pleas of Hamilton County will bar the commission from considering whether appellant's contract with McKibben constitutes an illegal attempt to split a certificate, if certificate splitting was raised as an issue in the Court of Common Pleas, or if it formed the

82

basis of the cause of action in both forums and the same parties (or their privies) appeared therein.

The issue of illegal certificate splitting was not raised in the Court of Common Pleas. The central question in that litigation, as revealed by the pleadings, the parties' briefs and the conclusions of law which were incorporated into the permanent injunction order, was whether the consideration called for in the 1967 contract had been paid for by appellant and accepted by McKibben so that the contract was, therefore, enforceable.[4] The question of whether the terms of the contract constituted, by virtue of the terms of payment or by virtue of appellant's retention of control over the truck drivers, an attempt to split a certificate in derogation of statutes governing the commission's control of such certificates was not raised before or addressed by the Court of Common Pleas. We therefore find that certificate splitting was not "actually and directly in issue" before the Court of Common Pleas and that the doctrine of *res judicata* does not operate to estop the issue from being addressed by the commission in its proceedings.

Appellant contends further that "[a] finding or determination of the Public Utilities Commission * * * must be based upon the evidence of record in such case" and that, since the commission's determination that appellant was not a proper party to hold a permit was not based on such evidence of record, the determination is unreasonable and unlawful. The commission found, as one of its conclusions of law that appellant, pursuant to the 1967

[4]The conclusions of law of the Court of Common Pleas, which it incorporated into its final order, provide, in pertinent part:

"The court finds that the plaintiff has fully complied with the terms of the agreement with respect to payment of the Fifty Thousand ($50,000.00) Dollars, and in that respect, the contract is fully complete as to Werlin Corporation. The court further finds that tender by the plaintiff corporation with the endorsement set forth thereon was, as a matter of law, accepted by the defendant and constitutes an acceptance in accordance with the terms of the Endorsement."

contract, "paid $50,000 to McKibbon [*sic*] for a permanent agency or lease agreement." That conclusion is not supported by the evidence of record. (The information that appellant paid the $50,000 to McKibben was only available to the commission from the contract itself, which the examiner, over appellant's objection, placed in the file—though not in evidence—for use by the commission in the event the commission determined that McKibben and Maxwell were proper intervening parties.) It is established law in Ohio that "[t]he Public Utilities Commission must base its decision in each case upon the record before it." *Ideal Transportation Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195. See, also, *Schwerman Trucking Co.* v. *Pub. Util. Comm.* (1967), 10 Ohio St. 2d 253; *Michele Transportation Co.* v. *Pub. Util. Comm.* (1929), 121 Ohio St. 441. To the extent that the commission based its decision that appellant was an improper party for a permit on the fact that appellant paid McKibben when it agreed to lease its trucks to McKibben—a fact discernible only from the contract which was submitted by one not properly a party to the permit proceedings—the commission erred. However, in view of the evidence on record concerning the terms of the contract and appellant's activities thereunder from which the commission could find that the 1967 agreement between appellant and McKibben constituted an illegal certificate splitting agreement, we do not find that error to be prejudicial.

Although appellant's president characterized the contract as a typical truck leasing arrangement and stated that its purpose was to insure the use of appellant's equipment by McKibben, there is sufficient evidence of record that the 1967 contract constituted a certificate splitting agreement for this court to find that the commission's order is not "manifestly against the weight of the evidence." *City of Cleveland* v. *Public Util. Comm.* (1965), 3 Ohio St. 2d 82, 84; *Delphos* v. *Pub. Util. Comm.* (1940), 137 Ohio St. 422, 428.

The evidence reveals (1) that McKibben and appellant contracted in 1967 for appellant to service McKibben customers in areas which only McKibben was authorized by permit to serve; (2) that appellant, not McKibben, sued to enforce that agreement some eight years later; (3) that consideration under the contract was not transferred in the form usually employed in agreements to lease trucking service; and (4) that appellant dedicated its trucking managerial skills, its drivers (which it retained the right to hire and fire) and a considerable amount of its equipment (about $300,000 to $400,000 worth) to serving McKibben's customers.

The evidence that appellant controlled the trucking operation and that the contract was not an orthodox lease agreement suggests that the contract actually called for the transfer of a certificate to appellant rather than for the transfer of trucks to McKibben. We therefore do not find the commission's order to be against the manifest weight of the evidence. Since the commission had the power, in the permit hearing, to consider evidence of record concerning the terms of appellant's contract and its activities under that contract and since the evidence of record in that hearing supports the commission's determination that appellant was not a proper party to receive a permit, we find the order of the commission to be reasonable and lawful. The order of the commission is therefore affirmed.

*Order affirmed.*

O'Neill, C. J., Herbert, Parrino, Sweeney and Locher, JJ., concur.

P. Brown, J., concurs in the judgment.

Parrino, J., of the Eighth Appellate District, sitting for Celebrezze, J.