FAYETTEVILLE TELEPHONE COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Fayetteville Tel. Co. *v.* Pub. Util. Comm. (1982), 1 Ohio St. 3d 167.]

(No. 81-1923—Decided August 4, 1982.)

Messrs. Schneider, Prohaska & Sams, Mr. William H. Schneider, Messrs. Taft, Stettinius & Hollister, Mr. Robert Taft, Jr., and Mr. Daniel J. Hoffheimer, for appellant.

Mr. William J. Brown, attorney general, and Mr. Marvin I. Resnik, for appellee.

HOLMES, J. This case involves the duty of a telephone company to provide adequate service and the sanctions that the commission may impose upon a company for failure to so provide service.

R.C. 4905.22[4] imposes upon public utilities the duty to "furnish necessary and adequate service." The commission found that appellant was not providing adequate service;[5] therefore, the commission's next question was what sanction to impose for failure to furnish adequate service.[6] The commission chose to impose the ultimate sanction: forfeiting the privilege of operating. The commission ordered appellant's telephone company turned over to Cincinnati Bell with compensation paid for only that equipment which is used by Cincinnati Bell.

In resolving this dispute, we begin with the proposition that no public utility has an absolute, irrevocable right to operate in a given area. Cf. *Harold D. Miller, Inc.,* v. *Pub. Util. Comm.* (1967), 10 Ohio St. 2d 53 [39 O.O.2d 44]. Where the General Assembly authorizes the commission to strip a utility of its privilege to operate, the commission, by following the procedures contained in the grant of authority, may strip a utility of its right to operate. *Id.* at 56.

With respect to telephone companies, this authority is contained in R.C. 4905.241 through 4905.243. However, this authority may be exercised only in the manner provided in such sections. Therefore, we must decide whether the commission's exercise of authority comported with the statutory grant.

Turning to the relevant sections of the Revised Code,[7] R.C. 4905.241 allows any telephone company to file with the commission an application to serve an area in which another company is providing inadequate service. R.C. 4905.242 authorizes the commission to recommend a merger or other consolidation between a telephone company "unable or unwilling to render adequate service" with "one or more telephone companies furnishing telephone

---

[4] R.C. 4905.22 provides:

"Every public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish and provide with respect to its business such instrumentalities and facilities, as are adequate and in all respects just and reasonable. All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or by order of the public utilities commission, and no unjust or unreasonable charge shall be made or demanded for, or in connection with, any service, or in excess of that allowed by law or by order of the commission."

[5] We assume for purposes of decision that appellant was providing inadequate service.

[6] See, *e.g.,* R.C. 4905.381.

[7] R.C. 4905.241 through 4905.243.

service in adjoining areas." In the event that any consolidation is not forthcoming, the commission "may authorize any telephone company to provide telephone service in the area upon application and in the manner provided in section 4905.241 of the Revised Code." Further, in the event that no company is forthcoming, R.C. 4905.243 allows the commission, upon petition of customers or its own motion, to order an adjacent telephone company to provide service.

In this case, the commission acted solely under the authority granted it in R.C. 4905.243. The commission acted upon a petition of customers. It received no application under R.C. 4905.241, nor did it attempt to effect a consolidation under R.C. 4905.242.

By reading the relevant code sections *in pari materia,* we reach the conclusion that in the absence of an application, filed pursuant to R.C. 4905.241, the commission may not terminate a telephone company's right to operate in an area without first attempting to effect the integration, merger or consolidation with an adjacent company.

This conclusion is reached by our reading of the code sections and practical considerations. R.C. 4905.242 provides that *whenever* the commission finds that a telephone company is unable or unwilling to provide adequate service to any portion of its territory, the commission may[8] attempt to effect a consolidation between that company and an adjoining one. Also, R.C. 4905.243 is limited by its own language to only those instances where an application, as authorized by R.C. 4905.242, is not filed. The filing of such an application presupposes failed attempts at consolidation, so one may assume that the General Assembly did not contemplate use of R.C. 4905.243 until exhaustion of the provisions of R.C. 4905.242.

Examining practical considerations, we observe that the problem the General Assembly sought to alleviate by enacting these sections was inadequate service provided by companies without the financial resources to provide adequate service.[9] The General Assembly adopted a remedial, rather than punitive, approach. The focus was on remedying the existing shortcomings in the system, not punishing those who had created them. It is logical to assume that the General Assembly intended that a less severe sanction — consolidation — would be attempted prior to imposition of the ultimate sanction — termination of the operating privileges. See *Silver Beehive Tel. Co.* v. *Public Service Comm.* (1973), 30 Utah 2d 44, 512 P. 2d 1327. Additionally, if we approved the procedure used by the commission in this case, there would be no guarantee that appellant's subscribers would receive improved service.

---

[8] The use of the word "may" instead of "shall" implies permissive rather than mandatory. *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102 [56 O.O.2d 58]. However, "may" is used in a permissive context here. It means that the commission *may* attempt a consolidation, or it *may* impose a less severe sanction. See fn. 6, *supra.*

[9] When these sections were enacted, there were 181 telephone companies serving Ohio. Schneider, Public Utility Legislation, 14 Ohio St. L.J. 377.

There is nothing in the record which would inexorably lead to the conclusion that Cincinnati Bell would provide the requisite service.[10]

The commission may exercise only that jurisdiction which is conferred upon it by statute. *Pike Natural Gas Co.* v. *Pub. Util. Comm.* (1981), 68 Ohio St. 2d 181, 183 [22 O.O.3d 410]. Here, in terminating appellant's privilege of operating, the commission did not follow the procedures established by the General Assembly; therefore, it acted in excess of its jurisdiction.

Accordingly, we reverse the order of the commission and remand[11] for further proceedings consistent with this opinion.

*Order reversed and cause remanded.*

W. BROWN, SWEENEY, LOCHER, C. BROWN and KRUPANSKY, JJ., concur.

CELEBREZZE, C.J., dissenting. I respectfully dissent from the majority opinion, in general, and paragraph two of the syllabus, in particular. In my judgment, R.C. 4905.241, 4905.242 and 4905.243 provide three separate, independent, alternate remedies which authorize the commission to order a telephone company to serve an area in which another company is unable or unwilling to provide adequate service.

R.C. 4905.243 is the sole statutory provision which covers situations like the one *sub judice* — where no adjacent telephone company has filed an application to serve the area receiving inadequate service. I submit that in situations like the one at bar, the provisions of R.C. 4905.243 may be invoked by the commission without first attempting to implement the remedy set forth in R.C. 4905.242.

In my view, this is precisely the type of case that R.C. 4905.243, alone, was designed to remedy. The record demonstrates that appellant's customers are receiving inadequate service and that the cost of improving service would result in excessively high rates to those subscribers. Furthermore, the record also reveals that no applications had been filed, pursuant to R.C. 4905.241 or 4905.242, by an adjacent telephone company, despite the fact that the commission served its order of July 22, 1981 on all adjacent telephone companies,

---

[10] Also, before the commission can order another company to provide service, R.C. 4905.243 requires it to find that "the rendition of such service in the area receiving inadequate service will not prevent the company so ordered to serve from earning a fair return on the value of the property devoted by it to the public service."

As Cincinnati Bell has not participated in these proceedings, and such a finding has not been made, it is questionable whether Cincinnati Bell could be forced to provide service. Therefore, it is not inconceivable that appellant's customers would get no service if this order is approved.

[11] In its brief, appellant requests us to judicially notice that, since the commission's last order, it has cured many of the problems causing the inadequate service. At this point we decline to do so, or even to decide whether taking judicial notice would be appropriate. However, keeping in mind the remedial nature of R.C. 4905.241 through 4905.243, we feel that the commission must allow appellant to present evidence of these changed circumstances, and to determine whether in light of them appellant is currently providing inadequate service.

thus implicitly inviting the aforementioned applications.

Therefore, to require the commission to first recommend the detailed plan of integration, merger or consolidation referred to in R.C. 4905.242, merely serves to prolong the time that adequate service at reasonable rates is withheld from appellant's subscribers.

It seems to me that the commission's approach in this case was the most effective method of securing adequate service at reasonable rates for appellant's customers. By ordering a large company to assume responsibility for the service, the facility improvements can be made and the attendant costs can be spread over a much larger group of customers. As the commission noted: "As Cincinnati Bell customers, the Fayetteville Exchange subscribers should finally receive adequate telephone service at just and reasonable rates."

Accordingly, for all the foregoing reasons, I would affirm the order of the commission.