COLUMBIA GAS OF OHIO, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Columbia Gas of Ohio, Inc. *v.* Pub. Util. Comm. (1984), 10 Ohio St. 3d 114.]

(No. 83-1341—Decided April 18, 1984.)

Mr. *Thomas E. Morgan,* Mr. *Roger C. Post* and Mr. *Thomas J. Brown, Jr.,* for appellant.

Mr. *Anthony J. Celebrezze, Jr.,* attorney general, Mr. *Robert S. Tongren* and Mr. *Martin J. Marz,* for appellee.

*Per Curiam.* The issues presented in this appeal are: (1) whether the commission erred in concluding that COH's 1981 WS nomination was imprudent; (2) whether the commission unreasonably or unlawfully calculated the amount of the refund due COH's customers; (3) whether the commission's order violated COH's due process rights under the Fourteenth Amendment to the United States Constitution; and (4) whether the commission's order violated COH's right to equal protection guaranteed by the Fourteenth Amendment.

"Before proceeding further, we note that '[t]he scope of this court's review of commission orders is set forth in R.C. 4903.13, which states in pertinent part:

" ' " 'A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable.'

" ' " 'Under the "unlawful or unreasonable" standard specified in R.C. 4903.13, this court will not reverse or modify an opinion and order of the

116

Public Utilities Commission where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty,' *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104 [12 O.O.3d 112]. See, also, *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 108, 110 [12 O.O.3d 115]; *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 164 [12 O.O.3d 167]; *Duff* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 367, 370 [10 O.O.3d 493]; *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58 [1 O.O.3d 35], paragraph two of the syllabus; *Cleveland Electric Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393], paragraph eight of the syllabus. We assess the appellant['s] objections with this standard of review in mind." *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153, 155-156 [21 O.O.3d 96].' *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 404-405 [23 O.O.3d 361]." *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 93-94.

Appellant's Propositions of Law 1[2] and 4[3] challenge the commission's finding of imprudent management. Appellant contends that the commission erred in failing to balance investor and consumer interests in assessing the prudence of COH's 1981 WS nomination. Appellant further contends that "[t]he Commission, in this case, has not given reasoned consideration to all of the pertinent factors that are affected by the nomination decision. It has selectively chosen the factors it will consider and erroneously excluded equally important factors on the facile justification that they should be addressed in other rate proceedings."

Appellant would rely heavily on the testimony of the auditor, whose report stated that COH's "procurement policies and practices are consistent with the objective of obtaining an adequate supply of gas at minimum prices," and COH witness Daniel H. Garey. The commission order summarized Garey's testimony as follows:

"Company [COH] witness Garey testified that at the time the decision was made to nominate late, the Company calculated the savings to customers to be $2.1 million from early nomination net of subsequent recovery of interest costs in base rates and net of the roll-back effect through TCO rates. However, $3.7 million in additional interest costs would have to be incurred by the Company. Mr. Garey believes that a decision to incur $3.7 million of

---

[2] Appellant's first proposition of law states as follows:

"A utility's management is charged with the responsibility of prudent management of all costs and it is error for the public utilities commission to establish a standard of prudence for management decisions which fails to consider the company's costs."

[3] Appellant's fourth proposition of law states as follows:

"In testing the prudence of a utility management's decision, the public utilities commission must consider all costs which are affected by that decision, and a determination of management imprudence which is based on only a portion of the affected costs is unreasonable."

additional interest costs in 1981 in order to ultimately save the customer $2.1 million would not be justified."

The commission, however, rejected the auditor's conclusion that COH's 1981 WS nomination was reasonable and found the rationale for the decision propounded by Garey to be too solicitous of COH's shareholders at the expense of COH's customers. The commission instead relied on staff witness Charles Pavalko, Jr.'s testimony. Pavalko testified that COH should have nominated early in 1981 based on the data available to COH at the time it made its decision. After reviewing all the testimony, the commission stated as follows:

"The Commission is charged with the responsibility of overseeing the gas cost recovery rates which the Company charges its customers. Pursuant to Chapter 4901:1-14, O.A.C., the Company has within its tariffs a purchased gas adjustment clause which entitled it to recover the cost of gas that it sells to its customers. However, there is no *carte blanche* recovery of all gas costs. The gas costs passed through to customers are subject to the review by this Commission. Upon a finding that the cost of gas was reasonably incurred, the rates as previously charged are allowed to stand. However upon a finding that the Company has followed imprudent or unreasonable procurement policies and practices, the Commission may order a reconciliation adjustment to refund those gas costs which were imprudently incurred. * * *

"The Commission is firmly of the opinion that Columbia is under a duty to minimize the cost of gas which it supplies to its customers. In this case Columbia did not minimize the cost of gas, but chose instead to maximize its own profitability. The record is clear from both the evidence submitted by the Staff and by Columbia that at the time the decision was made it was clear that had Columbia nominated its winter service gas in the months of May, June, July, and August, 1981, it would have saved gas costs charged to the customers. Instead, the Company waited to July, August, September and October, 1981 to nominate the gas and incurred increased costs of the winter service gas in total disregard for the interests of its customers. The Commission cannot condone this action and will order the reconciliation adjustment recommended by the Staff. The Company's argument that it will not recover all its increased interest expense in its base rates simply is not sufficient justification for its actions. The Commission's treatment of winter service gas in the working capital allowance in base rates is a separate issue to be determined in the Company's rate cases. It is irrelevant to our determination of whether or not the Company acted to minimize those gas costs which it passes along dollar for dollar to its customers. Further, the Company's analysis attempts to weigh its customers' interest against the financial interest of the company. The Commission does not favorably view this type of balancing analysis. It is the Company's responsibility to act at all times in the best interests of its customers. * * *"

The commission clarified its position in its entry on rehearing. The commission stated that its "* * * regulatory responsibility in gas cost recovery

cases is to insure that gas costs are reasonably incurred and that there is no abuse of the automatic pass-through provisions. * * * The Commission never said that it would not consider the financial interests of the Company or the treatment of those winter service costs. We merely indicated that the appropriate manner in which to consider those issues is in a rate case proceeding and not a gas cost recovery proceeding. While the Company argues that the total situation surrounding the winter service decision must be evaluated in an integrated manner, we doubt that the Company would like to return to the days where an allowance for gas costs was determined in rate cases and did not change until a future rate case. Further, according to the statutory scheme, rate case proceedings and GCR proceedings are separate, and rate case issues cannot be determined in a GCR proceeding. This Commission will give consideration to the treatment of winter service gas as part of the working capital allowance in base rates in the Company's future rate cases. * * *"

The policy articulated by the commission is consistent with the legislative intention underlying R.C. 4905.302 and provides a basis that is neither unreasonable nor unlawful for the commission's decision to adopt the conclusions of staff witness Pavalko and to reject the conclusions of the auditor and the company witnesses regarding the prudence of COH's 1981 WS nomination decision. This court has previously recognized "the limited nature of R.C. 4905.302." See *Pike Natural Gas Co.* v. *Pub. Util. Comm.* (1981), 68 Ohio St. 2d 181, 184 [22 O.O.3d 410]. Moreover, our review of the record indicates that the commission did not ignore the investors' interests or fail to consider the broader financial ramifications of COH's WS nomination as COH contends.[4] Accordingly, we find appellant's contentions to be without merit.

We must now consider whether the commission erred in ordering a $7.6 million reconciliation adjustment to be refunded to COH's customers. Appellant contends that the $7.6 million amount is not supported by the record and further that if any reconciliation adjustment would be proper, the amount of this adjustment should not exceed $800,000.

Appellant characterized the $7.6 million adjustment as "simply an erroneous estimate of the actual cost of gas impact resulting from Columbia's decision. The actual impact on the cost of gas to Columbia Gas of Ohio is influenced by Columbia's nominating decision and the nominating decisions of all Transmission customers." COH would again rely on the auditor's report to support its contentions. The auditor stated that "* * * hindsight indicates

---

[4] The commission did take into account the increased interest cost and the effect of the "roll-back" to TCO that would have been incurred if COH had nominated early. See testimony of Pavalko quoted, *infra*, at page 119. The "roll-back" is based on the FERC-approved semi-annual purchased gas adjustment ("PGA") procedure. Under this procedure, TCO automatically recovers any underrecoveries incurred in one period from COH and its other distributing company customers in the next PGA period.

that economically customers may have benefited (at least short-run) in the 1981-1982 heating season from early nominations. * * * [B]ut it would be misleading to conclude that Columbia Gas of Ohio customers ultimately incurred or saved 'x' dollar amount based on that calculation."

Nevertheless, staff witness Pavalko took the data compiled by the auditor and extrapolated that COH's customers were entitled to a $7.6 million refund. He testified as follows:

"What we are comparing in this analysis is what are the effects on COH customers specifically due to COH's decision to nominate W.S. volumes late versus early. Regardless of what any other TCO customers' nomination activity might have been, we are specifically concerned with what the effects on COH customers have been due to COH's activity in the 1981 nomination period. As a result, because COH nominated late instead of early, COH missed the opportunity of W.S. cost savings of $7,626,270. An analysis of the missed opportunity for W.S. cost savings is as follows:

|  | "Historic Delivery/ "Early Nomination |
|---|---|
| "Initial Cash Outlay Reduction | $14,891,310 |
| "Interest Cost Increase | 2,916,777 |
| "Roll-Back Effect from TCO | 4,348,263 |
| "Net W.S. Cost Savings | $ 7,626,270" |

When asked to evaluate Pavalko's methodology, the auditor testified as follows:

"Well, as I understand Mr. Pavalko's testimony, what he was attempting to identify was only the impact of Columbia Gas of Ohio's decision. The impact that can also be caused by the decisions of other distribution companies on this was not addressed in his calculation.

"'* * *

"Within reason then, just focusing solely on that decision and not the impact that others would have, then I think his calculation is a reasonable way to approach that item.

"I say reasonable, because the whole thing can get extremely complicated, and I think that we used an approach and he's used an approach that perhaps has some simplification to it, but I think it's still reasonable."

Thus, while the auditor found Pavalko's methodology to be somewhat simplistic, he did concede that Pavalko's approach was qualifiedly "reasonable." This testimony by the auditor undercuts appellant's contention that Pavalko's testimony and the commission's reliance thereon had no basis in reason. After a careful review of the record, this court is unprepared to say that the commission's order for COH to refund $7.6 million to its customers was unsupported by the record and, hence, unreasonable or unlawful.

Appellant also contends that if a reconciliation adjustment was proper, then the amount of the adjustment should be $800,000,[5] and not $7.6 million. Appellant argues that the adjustment should be based on the data available to COH when it made the WS nomination decision in the spring of 1981 and not on a "hindsight analysis." The commission addressed this contention on rehearing as follows:

"* * * The refund which was ordered is directly attributable to those gas costs which were imprudently incurred. The refund will put the customers in the position they would have been had they not been charged for gas costs which were imprudently incurred. To reduce the amount of the refund would result in customers paying costs which never should have been incurred in the first place."

The commission properly assessed the prudence of COH's WS nomination decision at the time that decision was made but assessed the consequences of that decision in light of subsequent events. If COH's theory of recovery were adopted, then COH's customers would not recover the funds that they should never have been required to pay. Accordingly, we reject appellant's contention that the amount of the reconciliation adjustment should be limited to $800,000.

We now turn to appellant's constitutional claims. Appellant argues that it has been denied due process because the commission allegedly established a new standard to measure the prudence of its 1981 WS nomination decision and applied this new standard retroactively. According to appellant, in the instant case the commission "unexpectedly and erroneously injected a new standard in its rebuttable case * * * [and] compounded this error by adopting the Staff standard and retroactively applying it to Columbia's 1981 decision to measure the prudence of that decision." COH calls the allegedly new standard the "least cost" standard[6] and contends that this test differs substantially from the former standard announced in *Ohio Power Company,* case No.

---

[5] Appellant bases its contention that the reconciliation adjustment should be $800,000 on the following calculations: "* * * [I]f Mr. Pavalko's analysis were corrected to reflect the conditions existing in May, 1981 his analysis would be as follows:

| | |
|---|---|
| "Initial Cash Outlay Reduction | $6,294,000 |
| "Interest Cost Increase | 3,782,000 |
| "Roll-Back Effect from TCO ($6,294,000 x 27%) | 1,700,000 |
| "Net W.S. Cost Savings | $ 812,000" |

[6] Staff witness John D. Borrows defined "least cost" as follows:

"Least cost is the minimum expenditure by the company to provide the service. Timing differences in expenditures are analyzed with time value of money concepts. Alternatives are chosen on the basis of minimizing the current value of the expenditure streams of the alternatives."

79-234-EL-FAC, in that *Ohio Power*[7] looks to the total cost impact of a decision, including interest charges and rate base considerations, while the "least cost" test looks simply to price projections.

The commission responded in its entry on rehearing to appellant's contentions that a new standard had been applied retroactively as follows:

"* * * [T]he Commission never stated that the standard for gas costs must be least cost. The Commission did state that Columbia is under a duty to minimize gas costs. This duty is nothing new. From the very beginning of the GCR mechanism, Columbia's procurement practices have been reviewed to determine if they are consistent with obtaining an adequate supply of gas at minimum prices. It is ludicrous to suggest that somehow Columbia was not aware of this standard or duty and it was only with the issuance of the Commission's Order that it first became aware of the standard. Minimization of gas costs has always been the standard applied to a Company's gas purchasing practices and policies; that standard was applied to Columbia's actions, and Columbia failed to meet the standard."

The commission then reprised the *Ohio Power* test and determined that COH's decision failed to meet the *Ohio Power* test of reasonableness. Even if we assume, *arguendo*, that the commission used a new test in its original order, the commission's determination that COH's actions did not satisfy the *Ohio Power* criteria disposes of appellant's claim that its rights were violated. Under these circumstances, we cannot say that appellant did not receive due process of law.

Appellant next contends that it has been denied equal protection. The commission found COH to have been imprudent and ordered a substantial refund but did not find the West Ohio Gas Company, which apparently also elected to nominate late in 1981, to have acted imprudently and did not order

---

[7] In *Ohio Power* the commission provided the following rationale and standard:

"* * * The Commission is almost continually confronted with evaluating the reasonableness of decisions made by utility management, which decisions affect nearly every facet of utility operations and which were perhaps made only one week ago or several years earlier. Despite this diversity in decisions, there are several areas of inquiry which have almost universal applicability in the evaluation process. One area encompasses the facts and circumstances known or reasonably anticipated at the time the decision was made and whether such facts and circumstances were taken into proper consideration in the decision-making process. A second area involves the inquiry of whether any intervening circumstances occurred or facts become known which impacted the initial decision's results, whether such intervening factors caused or should have caused management to re-think the initial decision, and whether any action or nonaction in light of the intervening factors was appropriate. A third area is an examination of the actual results achieved by virtue of the decision. In the Commission's opinion, these three areas together comprise the proper standard for evaluating the reasonableness of utility decisions. However, the weight to be accorded the three aspects of the standard will vary, depending on the type of decision made and how long ago it occurred. In other words, the standard for evaluating the reasonableness of utility decisions involves the three areas of inquiry just discussed, with the weight to be accorded each area to be determined on an issue by issue basis within the Commission's discretion."

a refund in *In re West Ohio Gas Company* (May 25, 1983), case No. 82-82-GA-GCR.

In *West Ohio* the commission concluded that "West Ohio's procurement policies and contracts are consistent with the objective of obtaining a sufficient supply of gas at optimum prices." In the instant case the commission concluded that COH's action was "imprudent, unreasonable, and not in its customers' interests." The commission distinguished the two cases as follows:

"In the *West Ohio* case, the Commission found no evidence in the record to suggest that West Ohio did not act in the best interest of its customers as to winter service nominations. In this case, the record was replete with evidence that Columbia consciously chose not to act in the best interest of its customers. Consequently, the Commission was faced with a totally different situation in this case than existed in the *West Ohio* case. * * *"

The different conclusions regarding managerial imprudence in *West Ohio* and the case at bar provide a rational basis for the commission's decision to order a refund in the instant case while not making a similar order in *West Ohio*. Accordingly, appellant's claim of an equal protection violation is without merit.

For the reasons hereinbefore stated, the commission's order is affirmed, and the funds deposited pursuant to the stay granted in September 1983 with interest collected thereon, shall be distributed to appellant's customers pursuant to R.C. 4903.19, upon approval by the court of the trustee's plan for distribution. The trustee is hereby authorized and directed to immediately take all steps necessary to prepare a plan for the distribution of the funds held pursuant to the stay order. The plan shall be submitted to the court for approval within forty-five days of this order and shall provide that distribution be made within ninety days of this order. Appellant is ordered to cooperate with the trustee and provide all information the trustee deems necessary to effectuate compliance with this order.

*Order affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. I dissent from the majority's opinion in that it allows the commission to utilize a hindsight analysis to evaluate the business judgment of Columbia Gas. It is my position that the commission must review the utility company's decision based solely on the facts known to management at the time of the decision. To hold otherwise would require the company to predict future economic events in a constantly changing industry.

Pursuant to R.C. 4905.302(E), the Public Utilities Commission cannot prevent rate adjustments in this situation unless "the commission has reason to believe that an arithmetic or accounting inaccuracy exists with respect to such a distribution or that the company has * * * employed such other practices, policies, or factors as the commission considers inappropriate."

The record clearly establishes that due to the considerable increase in interest rates, the utility company selected a late nomination schedule. This decision was made to avoid the substantial interest costs which would be incurred for the prepaid purchase of the company's entire winter supply of natural gas. In light of the relatively minor projected increase in gas prices, the company's nominating policy was prudent and in the best interest of its customers at that time. An auditor's report filed with the commission also verified that appellant's actions were consistent with the objective of obtaining a sufficient supply of gas at a minimum price.

It is true that the projected increase in natural gas prices dramatically escalated two months after the company's decision. The escalation was neither predicted nor foreseen by the appellant and other entities. However, the commission, having the benefit of hindsight, penalized Columbia Gas for its failure to correctly predict the amount of the increase. This use of hindsight analysis is an abuse of discretion and, accordingly, I would reverse the order of the commission.