GOODSON ET AL., APPELLEES, *v.* McDONOUGH POWER EQUIPMENT, INC.,
APPELLANT.

[Cite as Goodson *v.* McDonough Power Equip., Inc. (1983),
2 Ohio St. 3d 193.]

(No. 81-1582—Decided January 5, 1983.)

---

[1] Subsequently, the Goodson family obtained a part interest in the mower.

[2] Among other safety precautions, the operator's manual included warnings not to give rides while mowing nor to allow individuals near the mower while operating it.

*Alfred J. Weisbrod Co., L.P.A.,* and *Mr. Alfred J. Weisbrod,* for appellees.

*Messrs. Estabrook, Finn & McKee, Mr. Thomas L. Czechowski, Mr. John P. Rieser* and *Mr. Thomas H. Pyper,* for appellant.

*Messrs. Thompson, Hine & Flory, Mr. William H. Wallace, Mr. Paul W. Brown, Ms. Barbara J. Arison, Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Robert E. Leach,* urging reversal, for *amicus curiae* Ohio Manufacturers' Association.

---

[3] The reported decision is that of the federal district court denying a motion for a judgment n.o.v.

*Messrs. Collier, Shannon, Rill & Scott, Mr. Mark L. Austrian* and *Mr. Thomas A. Hart, Jr.,* urging reversal, for *amicus curiae* Outdoor Power Equipment Institute, Inc.

*Mr. William H. Crabtree* and *Mr. Edward P. Good,* urging reversal, for *amicus curiae* Motor Vehicle Manufacturers' Association of the United States, Inc.

HOLMES, J. This cause occasions the review and analysis of one aspect of the doctrine of *res judicata,* that of collateral estoppel, as it has been applied in Ohio, and whether the traditional general rules as previously enunciated and followed should be applied to cases involving claims of product defective design. Collateral estoppel within the context of *res judicata* has been explained by this court to be preclusion of the relitigation in a second action of an issue or issues that have been actually and necessarily litigated and determined in a prior action. *Whitehead* v. *Gen. Tel. Co.* (1969), 20 Ohio St. 2d 108 [49 O.O. 2d 435].[4]

Case law in Ohio concerning the general doctrine of *res judicata* has long ago established the general principle that material facts or questions which were in issue in a former suit, and were there judicially determined by a court of competent jurisdiction, are conclusively settled by a judgment therein so far as concerns the parties to that action and persons in privity with them.[5]

As a requisite factor in the application of the principle of issue preclusion within the doctrine of *res judicata,* Ohio cases over the years in like manner have consistently held to the effect that a judgment can operate as collateral estoppel only where all of the parties to the proceeding in which the judgment is relied upon were bound by the judgment. Expressions are found within the cases that the record of a judgment, in order to preclude either of the party litigants, must be preclusive upon both. The operation of the rule must be mutual. If a judgment cannot be effective as *res judicata* against a particular person, he cannot avail himself of the adjudication and contend that it is available against others, as between them and himself. Therein lies

---

[4] In *Whitehead,* the court, at page 112, stated:

"The second aspect of the doctrine of *res judicata* is 'collateral estoppel.' While the merger and bar aspects of *res judicata* have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, Comment (c), and Section 68(2); *Cromwell* v. *County of Sac* (1876), 94 U.S. 351. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." (Emphasis *sic.*)

[5] See, *e.g., Norwood* v. *McDonald* (1943), 142 Ohio St. 299 [27 O.O. 240]; *State, ex rel. Ohio Water Service Co.,* v. *Mahoning Valley Sanitary Dist.* (1959), 169 Ohio St. 31 [8 O.O.2d 1]; *Grant* v. *Ramsey* (1858), 7 Ohio St. 157; *Conold* v. *Stern* (1941), 138 Ohio St. 352 [20 O.O. 449]; *Schimke* v. *Earley* (1962), 173 Ohio St. 521 [20 O.O.2d 143]; *Hixson* v. *Ogg* (1895), 53 Ohio St. 361; *Massillon Sav. & Loan Co.* v. *Imperial Finance Co.* (1926), 114 Ohio St. 523.

the general rule of mutuality of estoppel which has long been applied by this court and other courts in Ohio.[6]

There being the general requisite of an identity of persons and parties, or their privies, within the prior proceeding in order for the judgment or decree to operate as an estoppel, strangers to such a judgment or decree will not be affected thereby. *Woodward* v. *Moore* (1862), 13 Ohio St. 136, 143; *State, ex rel. Atty. Gen.,* v. *Cincinnati Gas-Light & Coke Co.* (1868), 18 Ohio St. 262, 299; *Frank* v. *Jenkins Bro. & Chipman* (1872), 22 Ohio St. 597, paragraph four of the syllabus; *Burt* v. *Wilcox Silver Plate Co.* (1884), 41 Ohio St. 204, 205. For all practical purposes, the mutuality rule is coextensive with the requirement that the plea of *res judicata* is available only to a party to the judgment and to his privies. See, generally, Annotation, 31 A.L.R. 3d 1044.

In recent years there has been much discussion in case law and law journals as to the legal viability of the application of the strict doctrine of mutuality as a requisite to collateral estoppel. Some courts throughout the country have abandoned the doctrine in whole or in part. Some cases specifically reject mutuality as it might be used either offensively or defensively, and permit nonmutuality in the application of collateral estoppel.[7] There are also cases which only specifically allow, or the opinions seemingly allow, the application of nonmutuality in its defensive use.[8] Other states, including Ohio (which cases will be referred to hereinafter), have generally continued to adhere to the requirement of mutuality in the application of collateral estoppel, with varying exceptions.[9]

Some writers have criticized the continued use of the mutuality principle,[10] while other commentators and writers disagree with the critics of the mutuality rule.[11]

---

[6] See *Schram* v. *Cincinnati* (1922), 105 Ohio St. 324; *Massillon Sav. & Loan Co.* v. *Imperial Finance Co., supra; Shoemaker* v. *Cincinnati* (1903), 68 Ohio St. 603; *Conold* v. *Stern, supra; Schimke* v. *Earley, supra.*

[7] See, *e.g., B. R. DeWitt, Inc.* v. *Hall* (1967), 19 N.Y. 2d 141, 225 N.E. 2d 195; *Hossler* v. *Barry* (Me. 1979), 403 A. 2d 762; *Pat Perusse Realty Co.* v. *Lingo* (1968), 249 Md. 33, 238 A. 2d 100; *Oates* v. *Safeco Ins. Co.* (Mo. 1979), 583 S.W. 2d 713; *Peterson* v. *Nebraska Natural Gas Co.* (1979), 204 Neb. 136, 281 N.W. 2d 525; *Bahler* v. *Fletcher* (1970), 257 Ore. 1, 474 P. 2d 329; *In re Estate of Ellis* (1975), 460 Pa. 281, 333 A. 2d 728; *Parklane Hosiery Co.* v. *Shore* (1979), 439 U.S. 322.

[8] See, *e.g., Morneau* v. *Stark Enterprises, Ltd.* (1975), 56 Haw. 420, 539 P. 2d 472; *Illinois State Chamber of Commerce* v. *Pollution Control Bd.* (1979), 78 Ill. 2d 1, 398 N.E. 2d 9; *Goolsby* v. *Derby* (Iowa 1971), 189 N.W. 2d 909; *Home Owners Fed. Sav. & Loan* v. *Northwestern F. & M. Ins. Co.* (1968), 354 Mass. 448, 238 N.E. 2d 55.

[9] See, *e.g., Spettigue* v. *Mahoney* (1968), 8 Ariz. App. 281, 445 P. 2d 557; *Adamson* v. *Hill* (1969), 202 Kan. 482, 449 P. 2d 536; *Norfolk & W. Ry. Co.* v. *Bailey Lumber Co.* (1980), 221 Va. 638, 272 S.E. 2d 217; *Daigneau* v. *National Cash Register* (Fla. App. 1971), 247 So. 2d 465.

[10] Bentham, Rationale of Judicial Evidence, 7 Works of Jeremy Bentham 171 (Bowring Ed. 1843); Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan. L. Rev. 281; Currie, The Tempest Brews, 53 Cal. L. Rev. 25 (1965).

[11] 1B Moore's Federal Practice (2d Ed.), 1805-1806, Paragraph 0.412[1]; Moore and Currie,

There has been a differing view in the state and federal courts as to the offensive versus the defensive use of the "nonmutuality rule." Acceptance of the offensive use of the rule has been placed in much greater question by most courts. See *Spettigue* v. *Mahoney* (1968), 8 Ariz. App. 281, 445 P. 2d 557, and *Reardon* v. *Allen* (1965), 88 N. J. Super. 560, 213 A. 2d 26.

In *Reardon,* the court, arguing against permitting the offensive use of the doctrine of collateral estoppel in a nonmutuality situation, stated that rejecting mutuality exposes a defendant who is subject to multiple claims to considerable detriment; that one disadvantage is that he must evaluate the risk of the first case with an eye to those to come, including cases of adversaries not yet known; and that another disadvantage may be illustrated by the example of an accident involving a bus, train, or airplane in which a number of passengers are injured. In elaboration of the last argument it was said that if a judgment against the defendant in the first action can be used by all other claimants, the defendant must put up the most vigorous defense even when the first action presents a minor claim. Annotation, 31 A.L.R. 3d, *supra,* at 1055-1056. See, also, 1B Moore's Federal Practice, Paragraph 0.412 [1].

The use of "offensive collateral estoppel" in nonmutuality cases in federal courts was sanctioned by the United States Supreme Court in *Parklane Hosiery Co.* v. *Shore* (1979), 439 U.S. 322.[12] However, even the court in *Parklane* pointed out that a party may not invoke collateral estoppel without showing that precisely the same issue was litigated in the prior action. *White* v. *World Finance of Meridian, Inc.* (C.A. 5, 1981), 653 F. 2d 147. See, generally, 18 Wright, Miller & Cooper, Federal Practice and Procedure,

---

Mutuality and Conclusiveness of Judgments, 35 Tulane L. Rev. 301 (1961); Greenebaum, In Defense of the Doctrine of Mutuality of Estoppel, 45 Ind. L. J. 1 (1969); Note, Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty, 35 Geo. Wash. L. Rev. 1010 (1967).

[12] In *Parklane,* the stockholders of the company sought to use a determination by the district court in an action brought by the Securities Exchange Commission (SEC) that the proxy statement was materially false and misleading. The stockholders contended that the defendant corporation was collaterally estopped from relitigating issues resolved against it in the SEC suit.

In *Parklane,* while noting that "the problem of unfairness [to a defendant] is particularly acute in cases of offensive estoppel," and admitting that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," the court nonetheless decided to endorse an approach that would not prevent federal courts from applying offensive collateral estoppel, unless considerations demonstrating unfairness to a defendant are shown or such application is otherwise improper under the circumstances. 439 U.S., at 329-331. The Supreme Court, in its opinion, set forth many of the justifications and reasons previously discussed in *Bernhard* v. *Bank of America* (1942), 19 Cal. 2d 807, 122 P. 2d 892, the landmark decision that discarded mutuality and allowed *defensive* collateral estoppel, as well as those discussed in *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation* (1971), 402 U.S. 313, where the Supreme Court had approved the abandonment of mutuality in a *defensive* context.

Section 4417 (1981). The burden of pleading and proving the identity of issues rests on the party asserting the collateral estoppel. *Hernandez* v. *Los Angeles* (C.A. 9, 1980), 624 F. 2d 935. Also, *Parklane* left undisturbed the requisite of privity, *i.e.,* that collateral estoppel can only be applied against parties who have had a prior "full and fair" opportunity to litigate their claims. *C. A. Hardy* v. *Johns-Manville Sales Corp.* (C.A. 5, 1982), 681 F. 2d 334, 338.

The application of nonmutual collateral estoppel in federal courts and other jurisdictions, permitting same in a subsequent action, requires close scrutiny of the prior record and decision to identify with precision what issues have in fact been actually litigated and decided in the prior action. Although generally permitting nonmutual collateral estoppel, the Restatement of Judgments 2d, at Section 27, Comment *c,* sets forth the procedures to be followed upon any consideration of such application. The Restatement states, at page 252, that to inquire into the identity of the issue in each case is one of the most difficult problems posed by issue preclusion. The Restatement proposes an analysis using a variety of factors to aid in making this crucial determination. Factors to be considered are: (1) the existence of substantial overlap between evidence and argument; (2) whether the new evidence or argument involves application of the same rules of law; (3) whether pretrial preparation and discovery reasonably could have been expected to cover the new matters in the prior action; and (4) the closeness of the relationship between the claims involved in the two proceedings.

Upon a review and consideration of this process which is applied in federal and other jurisdictions which have adopted nonmutuality as a general rule for collateral estoppel, we must conclude that there is within such procedure the suggestion that time-consuming and costly investigations may well be necessitated into collateral issues that may be essentially irrelevant to the actual issues between the parties then present before the court. It seems that these procedures would often offset any savings derived from collateral estoppel, and may indeed increase the total amount of litigation, negating one of the prime supportive arguments, *i.e.,* the economy of the judicial process.

As stated, Ohio has continued the requirement of mutuality for the application of collateral estoppel, as a general principle, even though recognizing the view of other states. Accordingly, in *Whitehead, supra,* Justice Thomas M. Herbert stated, at page 113, in the opinion:

"* * * The requirement of mutuality has been lessened, in some jurisdictions, by the expansion of the concept of privity and the creation of explicit exceptions to the rule. Semmel, Collateral Estoppel, Mutuality and Joinder of Parties (1968), 68 Columbia L. Rev. 1457, 1458."

However, viewing the doctrine on balance, Justice Herbert concluded for the court, at page 116, that:

"In our opinion, the existing Ohio requirement that there be an identity of parties or their privies is founded upon the sound principle that all persons are entitled to their day in court. The doctrine of *res judicata* is a necessary

judicial development involving considerations of finality and multiplicity, but it should not be permitted to encroach upon fundamental and imperative rights. It is our conclusion that the rule advocated by the appellant could create grave problems in establishing the adequacy of non-party's representation in the prior suit and that the case at bar is not one which should result in a departure from present Ohio law.''

The court of appeals here, and the appellees, point out that this court has recently decided the case of *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71 [6 O.O.3d 274], which it is claimed varies from the general rule as previously followed regarding the necessity of mutuality of estoppel. It is argued by the appellees that *Hicks* enunciates a new rule for Ohio, abandoning the mutuality rule. In review of the particular facts surrounding the determination in *Hicks,* and all of the pronouncements on the subject prior to and subsequent to that case, we conclude that this court has not, within the limited ruling of *Hicks,* abandoned the mutuality rule, but has only shown that it is willing to relax the rule where justice would reasonably require it.

*Hicks* arose out of an action for negligence brought against a physician, the city of Cincinnati, the University of Cincinnati, the board of trustees of the university, and Cincinnati General Hospital. A motion for summary judgment was filed on behalf of the city-defendants alleging that they had state governmental immunity in the ownership and/or operation of the hospital. The trial court granted defendants' motion and dismissed the case. The court of appeals affirmed. On appeal to this court, the judgment was reversed on the basis of the holding that collateral estoppel precluded the defendants from relitigating the immunity issue. This court relied on the prior case of *Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157 [60 O.O.2d 113], in which case the issue of ownership and control of the same hospital was before the court and it was determined that the hospital was a municipal institution and subject to suit.[13]

In *Hicks,* this court did indeed decide that case within the context of the Restatement of Judgments 2d, by referring in the opinion, at page 74, to

---

[13] This court stated, in pertinent part, at page 75, that:

"It is our determination that appellees may not now relitigate the issue of ownership and control of this hospital, all questions pertaining thereto having been properly before this court in *Sears, supra.* The pertinent appellees herein were represented parties or were in actual privity with represented parties in *Sears* and were accorded a full and fair day in court in that proceeding."

This court, in the stance of the facts presented in *Hicks,* stated, at page 74:

"It is clear that in *Sears,* the issue of the ownership and control of this hospital was before the court and that it was an issue which was directly confronted by the city of Cincinnati. All of the facts noted by the lower courts in the instant case to substantiate their conclusions that the state, rather than Cincinnati, owned and controlled the hospital were the same facts which existed at the time of *Sears.* In short, this court is now being asked to relitigate the issue of ownership and control of the hospital in the face of Cincinnati's repeated assertions in *Sears* that it owned, operated and controlled the hospital."

"Restatement of the Law 2d, Judgments (Tent. Draft No. 4 [1977]), Section 68, at page 1, and (Tent. Draft No. 2 [1975]), Section 88, at pages 89-90." However, we conclude that such determination related only to the narrow issue of ownership and control of the hospital, which determination would show the *status* of the hospital for purposes of the application of sovereign immunity. Such issue had specifically been addressed by this court in the prior cause. The prior determination was not one involving the liability of the city in its operation of the hospital, but one of ownership and control, and, as to that issue, there could be little question that the city previously had its day in court. The city of Cincinnati would yet have its day in court on the issue of *liability* under the facts to be presented in the latter proceeding.

This court in effect was stating in *Hicks* that under those facts where it was shown that the party defendant clearly had his day in court on the specific issue brought into litigation within the later proceeding, the non-party plaintiff could rely upon the doctrine of collateral estoppel to preclude the relitigation of that specific issue. We believe this exception to the principle of mutuality to be a proper one.

Also, it is apparent that this court has not abandoned the principle of mutuality by a review of cases that have been decided since *Hicks*. The viability of the general rule of the identity or mutuality of parties requirement is supported by a number of recent cases in which the issue was central to the decisions reached by this court. See *Schomaeker* v. *First Natl. Bank* (1981), 66 Ohio St. 2d 304, 313 [20 O.O.3d 285]; *Johnson* v. *Norman* (1981), 66 Ohio St. 2d 186, 190 [20 O.O.3d 196]; *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 44 [15 O.O.3d 53]; *Trautwein* v. *Sorgenfrei* (1979), 58 Ohio St. 2d 493 [12 O.O.3d 403]; and *Werlin Corp.* v. *Pub. Util. Comm.* (1978), 53 Ohio St. 2d 76, 81 [7 O.O.3d 152].

In *Trautwein, supra,* Chief Justice Celebrezze, speaking for a unanimous court and approving the second paragraph of the syllabus in *Whitehead,* stated, at page 501:

"The application of the concept of collateral estoppel requires an identity of both parties and issues. *Whitehead, supra,* at page 113; *Columbus* v. *Union Cemetery Assn.* (1976), 45 Ohio St. 2d 47 [74 O.O.2d 79]; *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71, 74 [6 O.O.3d 274]; *Werlin Corp.* v. *Pub. Util. Comm.* (1978), 53 Ohio St. 2d 76, 81 [7 O.O.3d 152]. In ascertaining whether there is an identity of such parties a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest. *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117 [49 O.O.2d 440], paragraph two of the syllabus. Quoting Justice Douglas in *State, ex rel. Hofstetter, supra,* at page 119, we indicated that ' " '* * * identity of parties is not a mere matter of form, but of substance.' " *Sunshine Anthracite Coal Co.* v. *Adkins,* 310 U.S. 381, 402.' "

The main legal thread which runs throughout the determination of the

applicability of *res judicata,* inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be "heard" in the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action. *Norwood* v. *McDonald* (1943), 142 Ohio St. 299 [27 O.O. 240]; *First Natl. Bank* v. *Berkshire Life Ins. Co.* (1964), 176 Ohio St. 395 [27 O.O.2d 360]; *Ohio Finance Co.* v. *McReynolds* (1927), 27 Ohio App. 42. Collaterally estopping a party from relitigating an issue previously decided against it violates due process where it could not be foreseen that the issue would subsequently be utilized collaterally, and where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein. This latter point was recognized in *State, ex rel. Westchester, supra,* paragraph two of the syllabus, in which this court held that where there has been a change in the facts since a prior decision, which either raises a new material issue, or which would have been relevant to the resolution of a material issue involved in the earlier action, neither the doctrine of *res judicata* nor the doctrine of collateral estoppel will bar litigation of that issue in a later action.

In many cases within which a motion for summary judgment is presented relying upon collateral estoppel, there may well have been attendant elements in the prior cause which could materially have altered the prior judgment, in which event the common party to the prior cause should not be deprived of his right to a trial by jury in the new cause. Any such deprivation would be an infringement upon the right of the common party to a trial by jury. Even as the rights of a new plaintiff will never be barred, in that he has not had his day in court, it would be inappropriate to adopt a principle of law that would infringe upon the defendant common party's right to a trial by jury.

Many factors, considerations and elements enter into any judgment of a court. There are the tangible, as well as the intangible, elements which have their meaningful effect upon the result of any cause, the nature of the claim and the claimants, as well as the nature of the defendant; the amount involved in such claim; the manner of the advocacy, often depending upon the amounts involved in such cause; the philosophical elements surrounding the cause; the agreed settlement, if any, in the matter; the vast differences between juries and their determinations of issues of liability and damages; and the unwillingness to appeal a verdict, if such would not be feasible. These are all factors which we must consider in the determination of whether the application of the doctrine of collateral estoppel, in the absence of mutuality, should be applied as a general rule in this jurisdiction.

The benefits garnered from applying collateral estoppel in any cause must be balanced against the costs associated with its application. The major

risk linked to such an application is that of an erroneous determination in the first case.[14]

The principles involved within this consideration have been well expressed in the legal commentary in 46 American Jurisprudence 2d 569-570, Judgments, Section 402, as follows:

"The doctrine of res judicata may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.

"* * *

"Underlying all discussion of the problem must be the principle of fundamental fairness in the due process sense. It has accordingly been adjudged that the public policy underlying the principle of res judicata must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which to present his case. * * *"

Upon a considered review of the arguments presented, as well as available cases and comment on the subject, we conclude that the principle of mutuality as a prerequisite to the application of collateral estoppel, as applied in this state, recognizing the need in certain instances for the flexibility and exceptions to such rule, has been responsive to the conflicting principles of due process and judicial economy. We therefore opt to adhere to such principle as a general proposition, while realizing that there may well be other cases in which there are presented additional exceptions which could be acceptable to this court upon the basis of serving justice within the framework of sound public policy.

Whether or not we, in the future, may conclude it to be advisable to adopt the nonmutuality rule as a general proposition, for the present we reaffirm our prior general stance that collateral estoppel may generally be applied only when the party seeking to use the prior judgment and the party against whom the judgment is being asserted were parties to the original judgment or in privity with those parties.

Even though we currently entertain the thought of abandonment of the general principle requiring mutuality of parties, and within that broadened framework, we cannot accept the proposition that "offensive nonmutual col-

---

[14] As one commentator has said:

"The dangers of issue preclusion are as apparent as its virtues. The central danger lies in the simple but devastating fact that the first litigated determination of an issue may be wrong. The risk of error runs far beyond the proposition that most matters in civil litigation are determined according to the preponderance of the evidence. The decisional process itself is not fully rational, at least if rationality is defined in terms of the formally stated substantive rules. Considerations of sympathy, prejudice, distaste for the substantive rules, and even ignorance or incapacity may control the outcome. Trial tactics are consciously adapted to these concerns, but efforts to reduce the irrationality may fail or backfire and efforts to exploit it may succeed." 18 Wright, Miller & Cooper, Federal Practice & Procedure 142, Section 4416.

lateral estoppel" be applied in actions involving issues of design negligence or defective design of mass-produced products particularly when the former adjudication of the issues arose out of a separate underlying incident.

Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case. 18 Wright, Miller & Cooper, Federal Practice and Procedure, Sections 4416-4417. Thus, a trial court must decide, prior to applying collateral estoppel, and appellate courts must review, whether the identical issue was actually decided in the former case. In a design defect case arising from separate underlying incidents, this would, in most instances, be no easy task. Thus, as suggested previously, the judicial resources sought to be saved in the name of judicial economy, are expended on questions collateral to the case.

The danger is multiplied in cases such as this one where the issue determined in the first litigation relates to a product's design. This is due to the nature of the questions and the potentially broad impact of their resolution. These questions are very technical, requiring expert testimony to bring out the specifics. Also, a jury's ultimate determination requires delicate balancing between the design decisions actually made by the manufacturer and those which are postulated as feasible within the industry at any given point in time. Thus, the determination made by a jury in any particular case will ofttimes not be free from doubt.

Just as the risk of an erroneous determination is increased by the complex nature of design issues, the potential impact of such a decision would be unfairly broadened by the offensive application of nonmutual collateral estoppel. This could result in a single jury, sitting in review of certain limited facts, entering a verdict which would establish safety standards for a given product for the entire country. It would not be prudent to raise a decision made by one jury in the context of one set of facts to the standard under which all subsequent cases involving separate underlying factual circumstances are judged. See, e.g., Weinberger, Collateral Estoppel and the Mass Produced Product: A Proposal, 15 New Eng. L. Rev. 1 (1979).

Additionally, even though we might accept the principle of the offensive use of nonmutual preclusion as applied to product design cases, applying the standards underlying *Parklane, supra,* and as set forth in Restatement of Judgments 2d, Section 27, Comment *c,* the appellees still could not prevail. A reading of all that is before this court, concerning the prior case of *Harrison* v. *McDonough, supra, i.e.,* the federal trial court's opinion and order, it may be determined that there were two totally separate accidents, with two different models of a riding lawnmower manufactured in different years by appellant manufacturer; there were different operators of the equipment with perhaps totally different mechanical capabilities; different terrain and weather conditions; also, the same rules of law were not applicable in both states — Florida had enacted a comparative negligence statute at the time of the accident in that case, while Ohio still had the rule of contributory negligence at that time; and, what is critically important to the appellant, the

differing trial techniques and appellate determinations that would have been made by legal counsel in the prior case if it had been known that the judgment would have been utilized in subsequent cases to estop a defense on the question of liability. Without the necessity of further analysis of the differences in this case and *Harrison,* we conclude that the appellees would not be reasonably able to show the requisite "identity of issues" for the application of nonmutual collateral estoppel.

In the overview, we hold that nonmutual collateral estoppel may not be used to preclude the relitigation of design issues relating to mass-produced products when the injuries arise out of distinct underlying incidents.

Based on the foregoing, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

SWEENEY, LOCHER, C. BROWN and KRUPANSKY, JJ., concur.

CELEBREZZE, C.J., and W. BROWN, J., concur in judgment only.