**Trudeau v. Kuhnle**
*[Cite as 2 AOA 287]*

*Case No. L-89-150*
*Lucas County, (6th)*
*Decided March 2, 1990*

*R.C. 2101.24*

This matter is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.

On January 9, 1987, Elizabeth T. Wammes was adjudged incompetent by the Lucas County Court of Common Pleas, Probate Division. In the same judgment entry, the probate court appointed Charles E. Bloom guardian of the person and estate of Wammes. At the time of his appointment, Bloom retained defendant-appellee, Carl A. Kuhnle, as attorney for the guardianship.

Plaintiff-appellant, Robert Trudeau, a nephew of Wammes, filed an application to move Wammes to Michigan and to remove Bloom as her guardian on September 25, 1987. By judgment entry dated October 21, 1987, the probate court stated that it would allow Wammes to be moved to Michigan and ordered appellant to file an application for guardianship in Michigan. The probate court ordered Bloom to complete the sale of Wammes' real estate and file a final account within thirty days of the closing.

Bloom prepared a first and final account setting forth the assets held by Wammes. The account was filed February 22, 1988. Appellant filed exceptions to the account on March 16, 1988. The exceptions stated:

"1. The accounting is not correct in that it does not take into account the funds lost by the guardian due to negligent actions by the guardian.

"2. Any attorney fees paid to the attorney for the guardianship and fees paid to the guardian should not be allowed due to the negligence of the attorney for the guardianship and the negligence of the guardian."

In a March 22, 1988 judgment entry, the probate court stated that a hearing on the final account and motion for attorney and guardianship fees would be held May 10, 1988.

The probate court filed a memorandum and judgment entry on June 14, 1988. The court ordered that Bloom be surcharged $66,730 ($65,430 tax liability incurred by the estate plus $1,300 late tax return filing penalty) and refused to allow Bloom any guardianship compensation.

On August 1, 1988, appellant filed a complaint in the Lucas County Court of Common Pleas against appellee. The complaint alleged that appellee committed malpractice in his role as Bloom's attorney for the Wammes guardianship. Appellant alleged that the estate sustained substantial losses as a result of

appellee's negligence and requested $250,000 in damages.

Bloom filed a request for findings of fact and conclusions of law in the probate court on December 2, 1988. The probate judge filed findings of fact, conclusions of law and an order supplementing the June 14, 1988 judgment entry on December 20, 1988.[1] This entry stated that Bloom's request for attorney fees for appellee was approved in the amount of $2,980. This figure represented Bloom's original request of $3,138 less the $150 fee incurred for appellee's meeting with a bank officer regarding cashing in the bonds.

On January 12, 1989, appellee filed a motion to dismiss the malpractice complaint pending in the common pleas court. Appellee asserted that the issue of his negligence had been fully litigated in the probate court and that relitigation was barred by *res judicata* and collateral estoppel.

By judgment entry dated April 19, 1989, the common pleas court granted summary judgment in favor of appellee. It is from this judgment that appellant has appealed setting forth one assignment of error:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT GRANTED APPELLEE'S MOTION TO DISMISS."

Appellant's argument is focused primarily upon the December 20, 1988 judgment entry of the probate court. Appellant asserts that the sole relevant issue decided by the probate court was whether to award appellee attorney fees for work on the Wammes guardianship. Arguing that the decision of the probate court did not decide the question of appellee's negligence, appellant contends that the judgment entry awarding attorney fees does not estop appellant from proceeding with a legal malpractice action in the court of common pleas. Appellant also asserts that the probate court does not have jurisdiction to decide a negligence claim and/or award damages. Appellant argues that any ruling by the probate court on the issue of malpractice would not have been issued by a court of "competent jurisdiction" and, therefore, could not provide the basis for a *res judicata* dismissal of a subsequent cause of action.

In *Goodson* v. *Mcdonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193, 195, the Supreme Court of Ohio stated:

"Collateral estoppel within the context of *res judicata* has been explained by this court to

be preclusion of the relitigation in a second action of an issue or issues that have been actually and necessarily litigated and determined in a prior action." (Citation and footnote omitted.)

The *Goodson* court further stated that such material facts or questions must have been "* * * judicially determined by a court of *competent* jurisdiction * * *." *Id.* (Emphasis added.) Accordingly, upon review of the entry of summary judgment, we are called upon to decide whether the trial court correctly concluded that the issue of appellee's negligence was fully litigated by the probate court and, if so, we must decide whether the probate court had jurisdiction to determine such an issue.

An absolute prerequisite, in the due process sense, to the application of collateral estoppel is that, as the party asserting the preclusion, appellee must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action. *Norwood* v. *McDonald* (1943), 142 Ohio St. 299. To collaterally estop a party from relitigating an issue previously decided against it violates due process if it could not be foreseen that the issue would subsequently be used collaterally, and where the party had little incentive to litigate fully in the first action due to the procedural and/or factual circumstances present at that time. *Goodson* v. *McDonough Power Equip., Inc., supra,* at 201.

In order to maintain a cause of action for attorney malpractice the claimant must prove: "* * * (1) an attorney-client relationship existed at the time of the incident, (2) the attorney breached his duty by failing to provide competent legal services, and (3) the plaintiffs suffered damages as a proximate result of the attorney's breach of duty." *Howard* v. *Sweeney* (1985), 27 Ohio App. 3d 41, 43. (Citation omitted.) Our analysis of the December 20, 1988 probate court decision leads us to conclude that, with the exception of the attorney-client relationship question, none of these issues were actually litigated.

In its December 20, 1988 decision, the probate court concluded that appellee should receive attorney fees for the majority of work he performed for the guardianship. In response to objections filed by appellant to the payment of attorney fees, the probate court found that appellee's "*fee* was fair, reasonable and in the best interest of the ward except for the sum of $150. The Court approves counsel's fee in the sum of $3138, less $150, or $2988." (Emphasis

added.) The probate court did not determine whether appellee breached his duty to appellant by failing to provide competent legal services. We do not find, as appellee argues, that because a majority of the requested attorney fees were awarded, the inference is that the probate court specifically found that no malpractice was committed. An award of attorney fees, payable out of the ward's estate, may be relevant to, but is not identical to, a claim for malpractice asserting $250,000 in damages.

We find that the trial court incorrectly determined that appellee established that the issue of attorney malpractice was actually litigated or directly determined by the probate court. Further, the issue of appellee's alleged negligence was not essential to the result reached in probate court.

The probate court was merely called upon to determine whether appellee should be paid out of the guardianship fund for his legal services.

The issues of breach of duty, proximate cause and damages were not before the probate court nor were they essential to the judgment entered. Further, if it was the objective of the probate court to rule on the malpractice claim, although we do not believe that was the court's intent, it was without jurisdiction to enter such judgment. See *Wolfrum* v. *Wolfrum* (1965), 2 Ohio St. 2d 237; *Elden* v. *Sylvania Savings Bank Co.* (Oct. 21, 1983), Lucas App. No. L-83-211, unreported, and *Cropper* v. *Teffner* (Dec. 8, 1988), Richland App. No. CA-2606, unreported.

Accordingly, appellant's sole assignment of error is found well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. See also Supp. R. 4, amended 1/1/80.

*Judgment reversed,*
*cause remanded.*

PETER M. HANDWORK, P.J GEORGE M. GLASSER, J. Concur.

Prior to his death, Judge JOHN J. CONNORS, JR., did participate in the decision-making process of this case.

---

[1] Bloom appealed the decision of the probate court to this court and we reversed. We found that Bloom "* * * acted within the authority given him by statute and with good faith * * *" and held he was not liable for any loss to the Wammes fund. *In the matter of the Guardianship: Elizabeth T. Wammes* v. *Bloom* (Sept. 15, 1989), Lucas App. No. L-89-012, unreported. We modified the probate court's award of attorney fees and held that Kuhnle, appellee in the case *sub judice*, should be compensated in the amount of $3,148.