**McCullough Construction**
**v.**
**Local Union No. 55**
*[Cite as 2 AOA 283]*

*Case No. OT-89-12*

*Ottawa County, (6th)*
*Decided April 27, 1990*

*Jack Gallon, Jeffrey Julius and John M. Roca,*
*Counsel for Appellants/Cross-Appellees.*

*Alan G. Ross and Evelyn P. Schonberg, Counsel*
*for Appellee/Cross-Appellant.*

This matter is on appeal from a judgment of the Ottawa County Court of Common Pleas.

Appellee/cross-appellant, McCullough Construction, Inc., ("McCullough") is a nonunion, general construction firm. In June 1984, McCullough entered into a contract to build two conveyors for United States Gypsum Company ("USG") at USG's plant in Genoa, Ohio (the "Genoa plant").

On August 21, 1984, McCullough began building the conveyors at the Genoa plant. On August 23, 1984, members of appellant/cross-appellee, International Association of Bridge, Structural and Ornamental Iron Workers, Local Union No. 55, AFL-CIO (the "Union"), began picketing outside the Genoa plant. McCullough alleges that between August 23, 1984 through September 20, 1984, the Union, by mass picketing and acts of violence, prevented McCulloughs' employees from entering the Genoa plant and working on the conveyor project.

On August 27, 1984, McCullough brought the present action seeking an injunction regarding the picketing at the Genoa plant. On September 20, 1984, the trial court granted a preliminary injunction enjoining the Union from picketing at the Genoa plant, and the case was continued for further proceedings.

In addition to seeking injunctive relief in the present action, on September 5, 1984, McCullough also filed a complaint with the National Labor Relations Board ("NLRB"), alleging that the picketing of the Genoa plant constituted an unfair labor practice. On May 24, 1985, after a hearing before an administrative law judge, the Union was found to have committed an unfair labor practice by violating Section 8(b)(7)(C) of the Labor Management Relations Act which prohibits picketing of an unreasonable duration absent the filing of an election petition. The Union did not appeal the decision of the NLRB.

On May 20, 1986, McCullough amended its original complaint in the present action seeking both a permanent injunction and $50,000 in damages. On January 22, 1987, the trial court granted summary judgment in McCullough's favor on the ground that the May 24, 1985 decision of the NLRB collaterally estopped the Union from litigating the issue of liability for damages caused by the picketing. On June 23, 1987, McCullough again amended its complaint seeking damages of $100,000 plus attorney fees and costs and the case proceeded to trial on the issue of damages.

On November 7, 1988, the trial court awarded McCullough $27,546.76 in compensatory damages (later corrected by a November 29, 1988 *nunc pro tunc* entry to the amount of $28,418.76) and $15,000 in punitive damages. On March 31, 1989, following a hearing on a motion for attorney fees and prejudgment interest, the trial court awarded McCullough attorney fees in the amount of $122,048.73 and denied the motion for prejudgment interest.

It is from the judgments awarding compensatory damages, punitive damages and attorney fees that the Union raises the following ten assignments of error:

"1. The trial court erred when it granted Plaintiff-Appellee summary judgment on the issue of liability when it found that a decision of an Administrative Law Judge of the National Labor Relations Board collaterally estopped Defendants-Appellants from litigating the issue of their liability under Ohio law.

"2. The trial court erred when it found that Defendants-Appellants were liable for damages resulting from picketing violating Section 8(b)(7)(C) of the Labor-Management Relations Act, 29 U.S.C. Section 158 (b)(7)(C).

"3. The trial court erred when it awarded compensatory damages to Plaintiff-Appellee without determining whether such damages were proximately caused by picketing 'preempted' picketing or by violent picketing.

"4. The trial court erred when it awarded compensatory damages to Plaintiff-Appellee without determining whether Defendants-Appellants participated in, ratified and/or authorized any violent picketing.

"5. The trial court erred when it awarded compensatory damages to Plaintiff-Appellee in the absence of any evidence from which the fact of damages could be reasonably ascertained without speculation.

"6. The trial court erred when it awarded compensatory damages to Plaintiff-Appellee where the evidence demonstrates that Plaintiff-Appellee failed to mitigate its damages.

"7. The trial court erred when it awarded punitive damages to Plaintiff-Appellee where Plaintiff-Appellee failed to prove that Defendants-Appellants acted with malice and/or authorized, ratified or condoned such conduct.

"8. The trial court erred when it awarded attorney's fees to Plaintiff-Appellee.

"9. The trial court erred when it awarded Plaintiff-Appellee damages exceeding the amount specified in Plaintiff-Appellee's demand for relief.

"10. The trial court erred when it prohibited Defendants-Appellants' expert witness from testifying as an expert."

It is from the judgment denying its motion for prejudgment interest that McCullough raises the following cross-assignment of error:

"The trial court utilized an erroneous standard in failing to award to McCullough prejudgment interest."

The Union's second assignment of error will be addressed first. As its second assignment of error, the Union argues that federal law, specifically the National Labor Relations Act, has preempted state regulation of labor disputes.

In general, state courts are preempted from entertaining claims involving activities which are either protected or prohibited by the National Labor Relations Act. See *San Diego Building Trades Council* v. *Garmon* (1959), 359 U.S. 236, 244. However, the United States Supreme Court has held that state courts are not preempted from entertaining common law tort actions for damages caused by mass picketing and violent acts. *E. g., International Union, United Automobile, Aircraft and Agricultural Implement Workers* v. *Russell* (1957), 356 U.S. 634, 641; *United Construction Workers* v. *Laburnum Construction Corp.* (1954), 347 U.S. 656, 665. Specifically, in *Laburnum, supra*, at 664, the court held that a construction company, which was forced to abandon its construction projects due to threats of violence from union members, was entitled to recover compensatory and punitive damages in a common law tort action in state court. However, the United States Supreme Court has repeatedly

held that while a state "may impose damages for the consequences of violent conduct, it may not award compensation for the consequences of non-violent, protected activity," *NAACP* v. *Claiborne Hardware Co.* (1982), 458 U.S. 886, 918. It is clear that a state court must delineate between damages recoverable under traditional tort law and damages that result from unfair labor practices.

In the present case, the trial court did not distinguish between damages that resulted from alleged tortious acts of the Union (*i.e.*, property damage and obstruction of access to property) and damages that resulted from unfair labor practices. As the trial court stated in its January 22, 1987 judgment entry:

"The 'mass [picketing] and violence' is, to this court, only one of the issues to consider in determining the amount, if any, of damages that plaintiff suffered as a result of the unfair labor practice (illegal picketing) that prohibited the plaintiff from orderly and timely completing its job."

Further, in its November 7, 1988 judgment entry the trial court stated that because the NLRB ha found the Union guilty of unfair labor practices "the issue of liability was estopped from being tried again in this cause and that the only issue remaining was the causal connection between that illegal practice and any damages McCOLLOUGH suffered."

Therefore, we find the trial court exceeded its jurisdiction in entertaining claims for damages resulting from unfair labor practices as well as tortious actions allegedly committed by the Union. Accordingly, the Union's second assignment of error is found well-taken.

The Union's first, third and fourth assignments of error will be considered together in that these all address the issue of whether the doctrine of collateral estoppel is applicable to the present case. Specifically, the Union argues that the trial court erred in finding that the May 24, 1985 NLRB decision estopped the union from litigating issues of liability, proximate cause and agency.

The issue before the NLRB was whether the Union committed an unfair labor practice by picketing for an unreasonable duration absent the filing of an election petition. Section 8(b)(7)(C) of the National Labor Relations Act specifically limits recognitional or organizational picketing to "a reasonable period of time not to exceed thirty days from the commencement of such picketing." It is well-settled that a period of time less than thirty

days may be found unreasonable if the picketing is accompanied by intimidation, mass picketing or violence. *E. g., Cuneo* v. *United Shoe Workers* (N.J. 1960), 181 F. Supp. 324. The NLRB found that although the Union picketed for less than thirty days, such picketing was of unreasonable duration due to acts of violence and the mass picketing which prevented access to the job site.

Thus, the issue before this court is whether the May 24, 1985 NLRB decision should have been given collateral estoppel effect in the present tort action.

In *Goodson* v. *McDonough Power Equipment, Inc.* (1983), 2 Ohio St. 3d 193, 201, the court stated as follows:

"[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action. Collaterally estopping a party from relitigating an issue previously decided against it violates due process where it could not be foreseen that the issue would subsequently be utilized collaterally, and where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein." (Citations omitted.)

In the present case, we do not find that there exists a sufficient identity of issues between those determined by the NLRB and those necessary to establish a traditional cause of action in tort. The NLRB's determination concerning the issues of mass picketing and acts of violence, was solely used to determine whether or not the Union filed an election petition within a reasonable period of time. In addition, the issue of proximate cause between the mass picketing and violence and damages suffered by McCullough was neither fully determined by the NLRB nor was such determination necessary for the NLRB's decision. Further, the NLRB's determination that those picketing were acting as agents for the Union was necessary to find the Union responsible for the improper act of picketing and not that the Union was responsible for acts of violence. We do not find such determination is sufficiently identical to support the elements of liability under traditional tort law.

Further, we are not aware of any case law where an NLRB determination that violent picketing shortened the reasonable time for filing an election petition was used to offensively collaterally estop the Union from litigating the issue of liability in a subsequent tort action. The cases cited by McCullough, where a decision of the NLRB was given *res judicata* effect in the subsequent proceeding, all involved claims brought under Section 303 of the Labor Management Relations Act and are inapplicable. Section 303 of the Labor Management Relations Act specifically provides for recovery of damages resulting from "any activity defined as an *unfair labor practice* in Section 8 (b)(4) of the National Labor Relations Act [which prohibits secondary boycotts]." (Emphasis added.) There is little to indicate that the Union could have foreseen that the issue of violence before the NLRB would subsequently be utilized collaterally in the present tort action.

Therefore, we find, as a matter of law, that the trial court improperly granted summary judgment on the issue of liability, proximate cause and agency. Accordingly, the Union's first, third and fourth assignments of error are found well-taken.

The Union's fifth, sixth, seventh and eighth assignments of error all address the issue of damages, including alleged error in award of compensatory damages, punitive damages and attorney fees. In addition, McCullough's sole cross-assignment of error alleges the trial court erred in failing to award prejudgment interest.

Inasmuch as we have determined that the trial court erred in precluding the Union from litigating the issue of liability, any damages awarded also constitute error. Accordingly, the Union's fifth, sixth, seventh and eighth assignments of error are found well-taken. McCullough's sole cross-assignment of error is found not well-taken.

As its ninth assignment of error, the Union argues tha the trial court erred in awarding an amount in excess of the amount prayed for in McCullough's complaint. Civ. R. 54(C) provides that "that demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand ***."

In the present case, McCullough's June 23, 1987 amended complaint prayed for judgment as follows: "One Hundred Thousand Dollar ($100,000) plus an additional sum of money as and for reasonable attorneys' fees, plus costs."

We find that only the amounts awarded as compensatory and punitive damages are limited to $100,000; we do not find that the amount awarded as attorney fees is also subject to such limitation. Accordingly, the Union's ninth assignment of error is found not well-taken.

As its tenth assignment of error, the Union argues that the trial court erred in excluding the testimony of its expert witness, John Duncan.

At no time did the Union make a proffer as to what the testimony of Duncan would have been. This court cannot determine whether the exclusion of Duncan's testimony was prejudicial and, therefore, such exclusion may not be assigned as error. *Combs* v. *Cincinnati Gas & Electric Co.* (1984), 16 Ohio App, 3d 98, 100. Accordingly, the Union's tenth assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee/cross-appellant pay the court costs of this appeal.

*Judgment reversed and cause remanded.*

PETER M. HANDWORK, P.J.
GEORGE M. GLASSER, J.
CHARLES D. ABOOD, J.
Concur.