OPINION
{¶ 1} Appellant C. Todd Senff appeals from the summary judgment rendered against him in the Court of Common Pleas, Stark County, in a suit seeking indemnification filed by Appellee Richard V. Washburn. The relevant facts leading to this appeal are as follows.
 {¶ 2} Prior to 1998, Appellant Senff and Appellee Washburn were both fifty percent shareholders in TMW, Inc., an Ohio corporation. At the same time, Marketing Advertising, Inc. was an Ohio corporation whose shares were 100% owned by Phillip Canfora. In early 1998, TMW, Inc. and Marketing Advertising, Inc., were merged to form Marketing Communications, LLC, aka "Marketec." In order to obtain capital for Marketec, Appellant Senff, Appellee Washburn, and Phillip Canfora executed a promissory note on January 22, 1998 in favor of United Bank in the amount of $300,000. The three also executed a commercial guaranty, personally guaranteeing payment of $250,000 of the $300,000 United Bank note. Additionally, appellant, appellee, and Canfora, on September 18, 1998, executed a promissory note in favor of United Bank in the amount of $500,000 as members of Marketec. On the same date, the three executed another commercial guaranty, personally guaranteeing payment of $250,000 of the $500,000 promissory note.
 {¶ 3} In August 1999, appellant, appellee, and Canfora began discussing the possibility that one of them would have to leave Marketec so that the business could continue to support the remaining two members. According to appellant, he sought to be released by appellee and Canfora from bearing any monetary obligations on behalf of Marketec. In September 1999, appellant left Marketec and began working for a company named Complete Media. In October 1999, Marketec ceased operation as a business. Appellee and Canfora apparently thereafter paid United Bank on the promissory notes to the extent of their respective personal guaranties. Appellee and Canfora further each paid $45,797 for appellant's guaranty portion, for a total of $91,594.
 {¶ 4} In December 1999, United Bank filed suit in the Summit County Court of Common Pleas against appellant based on the aforementioned personal guaranties. United Bank thereupon obtained, inter alia, a judgment against appellant for $250,000.
 {¶ 5} In May 2000, appellant filed a Chapter 7 petition for bankruptcy in the United States District Court, Northern District of Ohio. On November 15, 2000, and December 1, 2000, Appellee Washburn, Canfora, and United Bank filed complaints in bankruptcy court seeking denial of appellant's discharge. On July 13, 2001, appellant entered the following written stipulation in his bankruptcy action:
 {¶ 6} "The parties hereby stipulate to the following facts for purposes of the Adversary Proceeding set for trial on July 17, 2001 and July 19, 2001.
" * * *
 {¶ 7} "Richard Van Washburn (`Washburn') and Philip Canfora (`Canfora') are individual creditors of [Senff], and are each owed the principal sum of $45,797.12 (a total of $91,594.20) due to business obligations on which Washburn, Canfora, and [Senff] were co-obligors or co-guarantors with United National Bank. The amount owed represents [Senff's] proportionate share of the payments made to the Bank by Canfora and Washburn as a result of [Senff's] failure to honor his personal guaranty."
 {¶ 8} However, on November 16, 2001, the bankruptcy court denied appellant's request for discharge, finding that appellant's transfer of his interest in his marital residence and the purchase of shares of Complete Media by appellant's wife were fraudulent transfers pursuant to R.C. 1336.04.
 {¶ 9} In the case sub judice, Appellee Washburn filed a suit seeking indemnification against appellant on July 22, 2002. Appellee filed a motion for summary judgment on September 10, 2002. Appellee attached to his motion, inter alia, a certified copy of the above stipulation from the bankruptcy proceedings. Appellant filed a memorandum in response on October 16, 2002. On October 23, 2002, the trial court granted appellee's motion for summary judgment. On November 4, 2002, the trial court awarded judgment for appellee in the amount of $45,797.12 plus interest.
 {¶ 10} Appellant timely appealed and herein raises the following sole Assignment of Error:
 {¶ 11} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF [APPELLEE] AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER ANY AMOUNTS ARE OWED TO PLAINTIFF [APPELLEE] BY SENFF."
 I. {¶ 12} In his sole Assignment of Error, appellant contends the trial court erred in granting summary judgment in favor of appellee. We agree.
 {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
 {¶ 15} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Grava v. ParkmanTownship (1995), 73 Ohio St.3d 379, 381 (Citations omitted). The doctrine of collateral estoppel is the more restrictive aspect of the general theory of res judicata. Williams v. Chippewa Roofing, Inc. (Aug. 20, 1997), Medina App. No. 96CA0089, citing Walden v. State (1989),47 Ohio St.3d 47, 51, and Goodson v. McDonough Power Equip., Inc.
(1983), 2 Ohio St.3d 193, 195. Collateral estoppel cannot be applied unless the identical issue was (1) actually litigated, (2) directly determined, and (3) essential to the prior judgment. Id., citing Goodsonv. McDonough Power Equip., Inc., supra, at 201, and Hendrix v. NationwideIns. Co. (Dec. 11, 1991), Summit App. No. 15164.
 {¶ 16} Appellant argues that appellee was not entitled to judgment as a matter of law, specifically contending that the prior bankruptcy stipulation does not collaterally estop his defense under the three-part test of Goodson, supra. "Where a determination in a prior federal action was not essential to the judgment obtained therein, collateral estoppel will not foreclose consideration of the issue in a subsequent state proceeding involving a different claim for relief." Kelly v.Georgia-Pacific Corp. (1989), 46 Ohio St.3d 134, paragraph one of the syllabus. Under the circumstances of this case, we find appellant's Chapter 7 stipulation, that he owed $45,797 each to appellee and Canfora, was not "essential to the prior judgment" (see Goodson). Therefore, collateral estoppel would not prevent appellant from defending against appellee's indemnification suit. Furthermore, 1 Restatement of the Law 2d, Judgments (1982), Section 27, comment e, expresses that an issue is not "actually litigated" if it is the subject of a stipulation between the parties, unless the parties have manifested an intention to be bound. In the case sub judice, the parties specifically limited their bankruptcy stipulations to the two days set for proceedings in federal court, and said stipulations provide no indication of an intent to be further bound. Moreover, "[t]he doctrine of res judicata may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata *** is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice."Bauer v. Huntington Nat. Bank (Feb. 10, 2000), Franklin App. No. 99AP-347 (citations omitted).
 {¶ 17} Having determined that collateral estoppel should not have been applied under the facts of this case, we turn to the overall propriety of the grant of summary judgment to appellee. The procedural history of the case sub judice reveals that appellee filed his plaintiff's motion for summary judgment on September 10, 2002, attaching therewith certified copies of the stipulations and judgment entry from appellant's bankruptcy case. Appellant responded with an affidavit in support of denying the motion for summary judgment, averring in pertinent part as follows:
 {¶ 18} "11. In August of 1999, it was determined by the members of Marketec that the business would not support three individuals. Canfora and Washburn asked me to resign after I was unable to contribute additional personal funds to fund the ongoing business operation.
 {¶ 19} "12. Based upon the lack of business, it was determined that one member of Marketec should leave and permit the business to support solely the other two members.
 {¶ 20} "13. In September of 1999, I began working for Complete Media.
 {¶ 21} "14. It was discussed at that time with Washburn and Canfora that I would no longer be considered a member of Marketec, would not gain any earnings from the company, would not have any say in the business, and would not bear any monetary obligations on behalf of the company.
 {¶ 22} "15. The members of Marketec at that time attempted to have myself removed from the agreements with United in order to discharge any personal obligation that I may have with regard to Marketec. A buy-out agreement was drawn up which included terms that I give back my equity in the business in exchange for release of all liability."
 {¶ 23} Upon a de novo review, we find that appellant provided sufficient documentation under Civ.R. 56(C) such that reasonable minds could come to differing conclusions on whether appellant, appellee, and Canfora reached additional agreements on appellant's liability in the Marketec venture after August 1999. Therefore, we hold the trial court erred in granting summary judgment in favor of appellee.
 {¶ 24} Appellant's sole Assignment of Error is sustained.
 {¶ 25} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
By: Wise, J. Farmer, J., concurs.